[No. D015396. Fourth. Dist., Div. One. May 19, 1993.]

ESTEBAN RAUL LUCAS et al., Plaintiffs and Appellants, v.
GEORGE T. R. MURAI FARMS, INC. et al., Defendants and
Respondents.

**COUNSEL**

Singleton & Dean, Terry Singleton, Curtis L. Cooper and Shirlyn P. Daddario for Plaintiffs and Appellants.

Post, Kirby, Noonan & Sweat, David B. Oberholtzer, Stephanie Sontag, Bolton, Gomes & Jackson, David A. Gomes and Don B. Kates, Jr., for Defendants and Respondents.

## Opinion

**HUFFMAN, J.**—Plaintiffs appeal from summary judgments granted in favor of defendants George T. R. Murai Farms, Inc., Murai Farms Retirement Trust, and George Murai (collectively referred to as Murai) and Ramon Navarro, doing business as Chiquito Navarro Ranch (collectively Navarro). (Code Civ. Proc., § 437c.)[1] Plaintiffs Esteban Raul Lucas and Jorge Reyes (plaintiffs Guadalupe Reyes and Mario Garcia Reyes's decedent) (collectively plaintiffs) were migrant farm workers employed by Navarro at the time that a fire occurred in temporary migrant farm worker housing located on property adjacent to that of Murai and Navarro. Lucas was gravely injured in the fire and Reyes was killed. Plaintiffs sued Murai and Navarro for damages for personal injuries, on theories of premises liability, negligence, nuisance, negligence per se, breach of warranty of habitability, and intentional and negligent infliction of emotional distress.[2] They appeal the summary judgments entered on their complaint, alleging (1) the trial court should have granted a requested continuance in order for plaintiffs to revise their formally defective opposition papers, and (2) the trial court erred in finding that Murai and Navarro owed no duty to plaintiffs to make the premises where the fire occurred safe or to warn plaintiffs of the danger of flammable temporary housing structures. Plaintiffs further contend (3) the trial court should have found there was proximate causation between defendant Murai and Navarro's activities and plaintiffs' injuries, but (4) should not have ruled that the defense of reasonable implied assumption of the risk applied to plaintiffs' claims. Plaintiffs further challenge the trial court's ruling that (5) none of plaintiffs' statutory causes of action (nuisance and related theories) was viable. Having considered all the arguments, we affirm the judgments.

### Factual and Procedural Background

On October 22, 1987, when the fire occurred, Lucas and Reyes were undocumented Mexican nationals, working as migrant farm laborers and residing in an encampment known as the cancha, located along a creekbed on undeveloped land that was adjacent to the ranches owned by Murai and Navarro. As was their custom, Lucas and Reyes built a living structure in the cancha from parts of wooden pallets, tomato stakes, cardboard, irrigation plastic, and twine, all taken from trash dump areas on the Murai and Navarro ranches. In the 13 years before the fire, Lucas had lived in 8 different

---

[1]All statutory references are to the Code of Civil Procedure unless otherwise specified.

[2]Additional defendants named in plaintiffs' complaint included the owner of the adjacent land, Perry Pollock, and George Hruby, doing business as RIPCO, a private security service which patrolled the camp, sued as a Doe. Summary judgments in favor of those additional defendants have been affirmed by this court in *Lucas* v. *Pollock* (1992) 7 Cal.App.4th 668 [8 Cal.Rptr.2d 918], and *Lucas* v. *Hruby* (July 6, 1992) D014287 (nonpub. opn.).

self-built structures in several other camps, near his places of employment. He knew that a similar structure in another camp had burned the year before, probably due to use of a candle in it. Lucas was careful in using candles in his own shelter because of the danger of fire.

According to his deposition, Lucas believed that the property on which he was living belonged to Murai. However, it was actually undeveloped land owned by defendant Perry Pollock. Lucas never obtained anyone's permission to live on the Pollock property and was never told to stay there by any authorities on the ranches where he worked. He did not rent a more standard dwelling because of his fear of immigration authorities, because he was sending a substantial portion of his wages home to Mexico, and because he wanted to live near his employment and his friends.

At the time of the fire, Lucas and Reyes had been working for Navarro for approximately two weeks. On the night of the fire, Lucas went into the sleeping structure about 10 p.m. to go to sleep, while Reyes remained outside reading by the light of a candle. Both had had some beer that evening. Lucas does not know how the fire started. He woke up in the hospital with serious burn injuries and learned that Reyes had died in the fire.

At the time of the fire, defendant George Hruby, owner of Ranch-Industrial Patrol Company (RIPCO), had contracted with Murai and Navarro to provide security services to the farms. Hruby's contract did not include performing services outside the borders of either the Murai ranch or the Navarro ranch. Hruby was not told by any Murai or Navarro employees to patrol any areas outside the ranch property, such as the cancha area. However, Hruby's business provided basic police protection for the farm laborers who lived in the labor camp, since Hruby felt that no other police or border patrol agencies were ensuring the safety of the workers. RIPCO's activities in the cancha included prohibiting drinking and prostitution in the labor camp, restricting access to the camp, and expelling union organizers. RIPCO former employees signed declarations submitted in plaintiffs' opposition to the summary judgment motions, stating that their instructions regarding the cancha property and the methods used to patrol it came from Hruby, rather than anyone at Murai or Navarro.

At several points in the life of the labor camp, trash from the camp blew over onto Murai and Navarro property, and foremen employed by Murai and Navarro made the workers pick up trash in their camp. In building the shelter, Lucas used materials from trash heaps on the Murai farm, and Reyes used plastic from Navarro's farm. Navarro forbade workers to take discarded

materials of any kind from the ranch, including plastic. General Manager Mark Murai prohibited anyone from taking materials from the ranch as well.[3]

Murai provided some services and amenities to workers living in the cancha, such as allowing them to use water and toilet facilities on the Murai ranch, allowing them to receive mail there, and allowing caterers and vendors access to Murai land to provide services to camp inhabitants.

Approximately a year after the fire, plaintiffs filed this action for damages for personal injuries, on theories of negligence (premises liability, negligence and negligence per se), allegations of negligent and intentional infliction of emotional distress on behalf of Lucas, and causes of action for nuisance and breach of the warranty of habitability. Plaintiffs' allegations of a duty on the part of Murai and Navarro included a duty to provide adequate and safe housing for Lucas and decedent, as well as a duty to make safe the conditions on the cancha property or to warn plaintiffs of the dangerous conditions created by the flammable structures.[4] After extensive discovery, Murai and Navarro each filed motions for summary judgment or summary adjudication of issues. Opposition was filed, as well as reply papers by Murai objecting to the form of the opposition papers as not in conformance with San Diego Superior Court Local Rules 4.1(c), requiring plaintiffs to provide the court with page and line references to declarations and to highlight the pertinent sections thereof.

Oral argument was heard on the summary judgment motion on April 26, 1991, seven weeks after Murai had objected to the form of plaintiffs' evidence presented in opposition to the summary judgment motions. The court first considered and denied plaintiffs' attorney's oral request for a continuance in order to bring his papers into conformance with local rule requirements regarding citation of page and line of declarations and highlighting of material relied upon. (Super. Ct. San Diego Local Rules, rule 4.1(c).) The court noted that plaintiffs had had ample opportunity to submit amended papers or to request leave ex parte to submit properly annotated declarations. The court, however, noted that it had reviewed plaintiffs' declarations and went on to sustain evidentiary objections to portions of them.

---

[3]In plaintiffs' opposition to the summary judgment, they cited evidence to controvert defendants' claim that they never gave permission to the workers to take discarded materials for use in building the shacks. This material included declarations of former RIPCO employee James McLennan and former camp resident Modesto Merino.

[4]As will be discussed, in plaintiffs' briefing on appeal they have added claims that Murai and Navarro also had duties to eliminate the temporary structures on the adjacent property or to evict the workers from the flammable structures. However, no such duties are pled in the complaint. (See *Danieley* v. *Goldmine Ski Associates, Inc.* (1990) 218 Cal.App.3d 111, 119 [266 Cal.Rptr. 749].)

Argument was then held on the merits of the motions, which were granted. The trial court found as a matter of law that neither Murai nor Navarro had a duty to provide housing to Lucas and plaintiffs' decedent, to ensure that the cancha was safe and habitable, or to warn Lucas and Reyes of risks involved in living in the camp. The court noted that Murai was not an employer of plaintiffs, and neither defendant had any legal authority to eject the workers from the Pollock property. The court further ruled that Lucas and decedent Reyes had knowingly assumed the risk of the harm they suffered, and there were no triable issues of fact as to whether the fire was proximately caused by any conduct on the part of the moving defendants. The court further noted there were no triable issues of fact regarding negligence per se, as none of the statutes or ordinances relied upon applied to Murai or Navarro, who did not own or control the subject property.

Plaintiffs' motion for reconsideration of the order was denied, the court finding that plaintiffs had failed to set forth any new factual matters entitling them to relief under section 1008, subdivision (a). The court also ruled plaintiffs had not satisfactorily explained why they had failed to produce the additional evidence submitted at reconsideration at an earlier time.[5] Judgment was entered and plaintiffs timely appealed.[6]

## DISCUSSION

### I

Plaintiffs' main contention on appeal is that Murai and Navarro were not entitled to summary judgment because they did not completely establish an absence of control on their part over the area where the fire occurred, the cancha. They contend that triable factual issues remain as to the nature and extent of these defendants' control over the adjacent plot of land where the cancha was located. (*Isaacs* v. *Huntington Memorial Hospital* (1985) 38 Cal.3d 112, 134 [211 Cal.Rptr. 356, 695 P.2d 653, A.L.R.4th 1747]; *Southland Corp.* v. *Superior Court* (1988) 203 Cal.App.3d 656, 667 [250 Cal.Rptr. 57].) Plaintiffs also make subsidiary arguments that factual issues exist about proximate or legal causation between RIPCO's activities on the property and the harm which plaintiffs suffered, and that alleged statutory violations occurred leading to liability on these defendants' parts. (Pen. Code, §§ 372, 373a [maintaining or permitting a public nuisance]);

---

[5] In their motion for reconsideration, plaintiffs submitted approximately 30 pages of allegedly new and different facts regarding the use of discarded materials to build the shelters, restriction of access to the cancha by outsiders, RIPCO activities at the cancha, and Lucas's and Reyes's activities immediately before the fire.

[6] A cross-appeal by Navarro of an order denying sanctions under section 128.5 has been abandoned.

Health & Saf. Code, § 17000 et seq. [the Employee Housing Act]; Health & Saf. Code, § 17910 et seq. [the State Housing Law]; Civ. Code, §§ 3479, 3480 [governing nuisance]; and San Diego County Code, § 68.311 [governing sewage disposal].) These and a further subsidiary issue, the application of the defense of implied assumption of the risk, will fall by the wayside if we resolve the main issue of the existence of a duty (to make the premises safe or to warn of dangers) adversely to plaintiffs. (See *Knight* v. *Jewett* (1992) 3 Cal.4th 296 [11 Cal.Rptr.2d 2, 834 P.2d 696]; *Ford* v. *Gouin* (1992) 3 Cal.4th 339 [11 Cal.Rptr.2d 30, 834 P.2d 724].)

■ Before we discuss the duty question, however, we first reject plaintiffs' argument that the trial court abused its discretion by denying plaintiffs' request for a continuance at the oral argument on the motions in order to bring their opposing papers into conformance with San Diego Superior Court Local Rule, rule 4.1(c). ■ "Generally, power to determine when a continuance should be granted is within the discretion of the court, and there is no right to a continuance as a matter of law." (*Fisher* v. *Larsen* (1982) 138 Cal.App.3d 627, 648 [188 Cal.Rptr. 216].) "However, Code of Civil Procedure section 437c mandates a continuance of a summary judgment hearing upon a good faith showing by affidavit that a continuance is needed to obtain facts essential to justify opposition to the motion." (*Fisher* v. *Larsen, supra,* 138 Cal.App.3d at p. 648.) ■ Here, in contrast, plaintiffs presented opposition which they considered complete, but in an improper format. The trial court was under no obligation to allow plaintiff extra time to present its opposition in proper form, particularly where plaintiff had waited seven weeks after the reply papers objected to the form of the opposition before requesting such a continuance, and then did so at oral argument on the motions. Such behavior on plaintiffs' attorney's part does not show the kind of diligence which would require a trial court to exercise its discretion in only one way, i.e., to allow such a continuance.[7]

We are also not convinced that the trial court abused its discretion in denying reconsideration for the reason it stated, that plaintiffs had made no showing they were unable to present the alleged new and different state of facts earlier. (*Blue Mountain Development Co.* v. *Carville* (1982) 132 Cal.App.3d 1005, 1012-1014 [183 Cal.Rptr. 594]; § 1008, subd. (a).) In any case, the trial court's comments at the hearing on the motions showed that it

---

[7] The authority relied upon by plaintiffs to support their claim that a continuance should have been granted, *Security Pacific Nat. Bank* v. *Bradley* (1992) 4 Cal.App.4th 89 [5 Cal.Rptr.2d 220], is distinguishable on its facts. Unlike *Bradley,* here there was no apparent preferential treatment by the court of one litigant over another regarding the granting of continuances to revise papers. Nor was the effect of the denial of the continuance to terminate the party's action on purely procedural grounds. (*Id.* at pp. 96-97.)

did go ahead and review the declarations in order to check the evidentiary objections made to them, and that even if what plaintiffs alleged was correct, there was no showing of a nexus between plaintiffs' allegations of the defendants' control over the property and the plaintiffs' injuries. There is simply no showing that plaintiffs were harmed by the court's denial of a continuance under these circumstances.

## II

 Turning to the main issue of the extent of Murai's and Navarro's control over the cancha property, plaintiffs' theory is that the activities of Hruby's security service, RIPCO, constituted control over the premises such that the duty of a possessor of premises must be imposed upon the ranch owners. Plaintiffs also pursue an alternative theory that Murai and Navarro, as agents for each other, through the activities of their foremen, encouraged the workers to live at the cancha by providing services, amenities, and security at the premises, and controlling access to them, such that the ranch owners undertook a measure of obligation that would justify a court in imposing upon Murai and Navarro as a matter of law a duty to make the premises safe or to warn of dangers.[8]

In support of their assertion that Murai and Navarro had a duty based upon their control of adjacent land, plaintiffs rely upon *Isaacs v. Huntington Memorial Hospital, supra*, 38 Cal.3d at pages 123-124 and *Southland Corp. v. Superior Court, supra*, 203 Cal.App.3d at pages 664-667. In *Isaacs*, the Supreme Court held: "A defendant cannot be held liable for the defective or dangerous condition of property which it did not own, possess, or control. Where the absence of ownership, possession, or control has been unequivocally established, summary judgment is proper. [Citations.]" (*Isaacs v. Huntington Memorial Hospital, supra*, 38 Cal.3d at p. 134.)[9]

---

[8]As noted previously, although plaintiffs attempt to allege additional forms of duty in their briefs on appeal (i.e., that Murai and Navarro should have eliminated the housing structures on the adjacent land or evicted the workers from them), no such alternative forms of duty are pled in the complaint, and we therefore do not consider them here: The issues on summary judgment are properly framed by the pleadings. (*Danieley v. Gold Mine Ski Associates, Inc., supra*, 218 Cal.App.3d at p. 119.) Moreover, although the complaint pleads that Murai and Navarro had a duty to provide housing to their employees, plaintiffs have not seriously pursued such a theory on appeal; Navarro contends they have abandoned any such claim. Lucas testified he was never ordered or requested by his employers to live in the cancha. We need not further discuss this alleged duty without further meaningful support by plaintiffs for such an extensive imposition of duty upon employers.

[9]In *Isaacs, supra*, 38 Cal.3d at page 134, the Supreme Court summarized the rules applicable to review of a summary judgment: "Summary judgment is properly granted only

In *Southland Corp.* v. *Superior Court, supra*, 203 Cal.App.3d at page 666, the court summarized the holding of *Isaacs* as: "[W]here the absence of control has been unequivocally established, no basis for finding a duty or imposing liability exists. [Citations.]" In *Southland Corp.*, the Court of Appeal concluded that there were triable issues of fact concerning whether a store owner, which had an easement over adjacent land and allowed its customers to park on the land in order to gain access to the store, had a sufficient degree of control over that land, on which the plaintiff was criminally assaulted, in order to justify the imposition of a duty on the store owner to keep the premises safe for users of the property. The court noted that although the critical issue for imposition of a duty is control over premises, the concept of control as developed in case law has been somewhat elastic and "the exercise of control is not *necessarily* confined to those premises which are owned or possessed by the defendant." (*Id.* at p. 665, fn. 6.) A number of circumstances led to the Court of Appeal's conclusion that triable issues remained over the extent of the store owner's control over the adjacent lot, "so as to legally permit the imposition of a duty to those customers using the lot" (*id.* at p. 666), such as regular use of the adjacent lot for parking, authorization in the store lease for such parking, knowledge on the part of the store owner of the customers' regular use of the lot, and significant commercial benefit from the use of the lot. (*Id.* at p. 667.) In addition, the store owner was on notice that loitering and fighting went on both on the store premises and on the adjacent lot. (*Ibid.*)

■ In this case, plaintiffs rely upon several factors to support their assertion that Murai and Navarro had an adequate degree of control over the adjacent property where the cancha was located in order to support the imposition upon them of a duty of care and/or to warn of danger. First, Lucas claims that RIPCO was an agent of Murai and Navarro such that RIPCO's security activities at the cancha, such as banning alcohol and prostitutes, showed control over the entire premises. Murai, however, made a showing that it did not instruct RIPCO to patrol the camp. Navarro made a showing that he did not know about the existence of the camp until after the fire, and his contract with RIPCO also did not cover off-premises areas. It thus does not appear that any actions of Murai or Navarro, as principals, were relied upon by Lucas and Jorge Reyes to create the impression that RIPCO was the agent for the ranchers for purposes of insuring overall camp safety. (See *Howell* v. *Courtesy Chevrolet, Inc.* (1971) 16 Cal.App.3d 391, 401 [94 Cal.Rptr. 33].) ■ Although a principal is liable for the torts of an agent under the doctrine of respondeat superior, "for this liability to be

when the evidence in support of the moving party establishes that there is no triable issue of fact and that the moving party is entitled to a judgment as a matter of law. [Citations.]" Whether a duty of care exists is a question of law for the court which is reviewable de novo. (*Ballard* v. *Uribe* (1986) 41 Cal.3d 564, 572-573, fn. 6 [224 Cal.Rptr. 664, 715 P.2d 624]; *Scott* v. *Chevron U.S.A.* (1992) 5 Cal.App.4th 510, 515 [6 Cal.Rptr.2d 810].)

imposed on the innocent principal, the agent's tort must have been committed during the course and scope of his employment. [Citation.]" (*Shultz Steel Co.* v. *Hartford Accident & Indemnity Co.* (1986) 187 Cal.App.3d 513, 518 [231 Cal.Rptr. 715].) ▉ We conclude that as a matter of law, the type and extent of activities that RIPCO engaged in at the cancha were not enough to constitute control of the cancha property for purposes of imposing a duty on Murai and Navarro.

Secondly, plaintiffs rely upon the activities of Murai and Navarro employees, such as the foremen at the farms, to make a showing of some degree of control over the cancha property. For instance, Murai and Navarro foremen instructed workers living at the camp to pick up trash, and allegedly permitted scrap materials to be taken from Murai and Navarro dumps for use in building the wood and plastic shelters. By their activities in allowing the workers to use water and toilet facilities on Murai property, and allowing the workers to receive mail at the Murai address, it is alleged that these employers encouraged the labor camp environment to exist, and gained an economic benefit from it, so as to justify the imposition of a duty to make the premises safe or to warn of dangers.

A number of considerations lead us to reject plaintiffs' argument that a duty existed here as a matter of law. ▉ First, a duty to exercise ordinary care not to injure another will arise out of a voluntarily assumed relationship only if public policy dictates that such a duty should be imposed. (*Merrill* v. *Buck* (1962) 58 Cal.2d 552, 561-562 [25 Cal.Rptr. 456, 375 P.2d 304].) The guidelines in determining the public policy as to a given case are well established:

" 'The determination whether in a specific case the defendant will be held liable to a third person not in privity is a matter of policy and involves the balancing of various factors, among which are the extent to which the transaction was intended to affect the plaintiff, the foreseeability of harm to him, the degree of certainty that the plaintiff suffered injury, the closeness of the connection between the defendant's conduct and the injury suffered, the moral blame attached to the defendant's conduct, and the policy of preventing future harm.' " (*Walnut Creek Aggregates Co.* v. *Testing Engineers Inc.* (1967) 248 Cal.App.2d 690, 695 [56 Cal.Rptr. 700].)

▉ The facts here showed that both Murai and Navarro ranch owners and managers made an effort to prohibit workers from using building materials from the ranch scrap heaps, Navarro in particular because he believed the plastic used for fumigation of crops was poisonous. Even though Murai and Navarro foremen apparently did not prevent the workers

from taking such scrap materials from the ranch, the factors outlining the public policy for whether to impose a duty of care based on such activities indicate that no such duty should be imposed. In particular, foreseeability of this type of harm is questionable, and the necessary closeness of connection between defendants' conduct and the injury is missing, since it was the use of an open-flame candle in the shelter (over which use these defendants had no control) which caused the injury.

■ Rather, these facts fall under the rule set forth in *Donnell* v. *California Western School of Law* (1988) 200 Cal.App.3d 715, 720 [246 Cal.Rptr. 199]: "The law of premises liability does not extend so far as to hold [the landowner] liable merely because its property exists next to adjoining dangerous property and it took no action to influence or affect the condition of such adjoining property." ■ The activities of Lucas and the plaintiffs' decedent in building the shelters and using lighted candles in them must be distinguished in kind from the activities of the customers who used the dangerous adjacent parking lot in *Southland Corp., supra,* 203 Cal.App.3d 656, 664-667. Lucas and Jorge Reyes were not business patrons of their employers, and no third party criminal acts were inflicted upon plaintiffs for which the ranch owners should be held responsible. Instead, plaintiffs knew of the danger of using fire in the temporary structure, but did so anyway. ■ Although a possessor of land must exercise reasonable care to make the premises safe or to warn regarding dangerous conditions or activities the possessor knows of or could readily discover, "there is no obligation to protect the invitee against dangers which are known to him, or which are so apparent that he may reasonably be expected to discover them and be fully able to look out for himself.'" (*Miller* v. *Desilu Productions, Inc.* (1962) 204 Cal.App.2d 160, 164-165 [22 Cal.Rptr. 36]; see *Decker* v. *S. H. Kress Co.* (1959) 168 Cal.App.2d 365, 368 [335 P.2d 952].)

■ Thus, even though a landowner has a duty to protect invitees from the conduct of third persons, limited to those cases where the plaintiff is injured on premises owned, possessed, or controlled by the landowner (*Southland Corp., supra,* 203 Cal.App.3d at p. 664), it makes no sense to impose a duty on Murai and Navarro to protect the plaintiffs from the consequences of their own activity. ■ An owner of property is not an insurer of safety, but must use reasonable care to keep the premises in a reasonably safe condition and must give warning of latent or concealed perils. (*Danieley* v. *Gold Mine Ski Associates, Inc., supra,* 218 Cal.App.3d at p. 121.) ■ The danger of the structures at the cancha was obvious and was not in any sense latent or concealed, especially to those persons who built the structures and used them. Consequently, we see no basis for the

imposition of a duty on the ranch owners to warn of dangers inherent in the use of the structures just off their premises, nor any duty to make those structures safe for the inhabitants.

In some ways, some of Murai's and Navarro's conduct may be analogized to that of a good Samaritan, at least insofar as they allowed the camp inhabitants to use water and toilet facilities on the Murai property or failed to prevent the use of building materials taken from the scrap heaps. ▇ Generally, a person who has not created a peril has no duty to come to the aid of a third party in order to protect that third party against injury from the peril. (*City of Santee* v. *County of San Diego* (1989) 211 Cal.App.3d 1006, 1011 [259 Cal.Rptr. 757].) There is an exception to this general rule of "no duty to act": " '. . . [T]he volunteer who, having no initial duty to do so, undertakes to come to the aid of another—the "good Samaritan" . . . is under a duty to exercise due care in performance and is liable if (a) his failure to exercise such care increases the risk of such harm, or (b) the harm is suffered because of the other's reliance upon the undertaking. [Citation.]' [Citation.]" (*Id.* at p. 1012.) ▇ The acts which Murai did, allowing the use of water and rest rooms and tolerating the existence of the camp, are not equivalent to undertaking the alleged duties to plaintiffs. Whatever aid Murai and Navarro rendered did not increase the risk of harm to plaintiffs, nor did plaintiffs rely upon the services provided and thereby suffer further harm. Construction of the shelters and use of them with candles to provide illumination went on independent of any actions by these defendants.

### III

Because of the conclusions reached above, that no duty of care or duty to warn may be imposed on Murai and Navarro towards plaintiffs, we find it unnecessary to discuss the proximate causation issues argued, or the statutory claims directed toward the employers as alleged owners and controllers of property. (Pen. Code, §§ 372, 373a [maintaining or permitting a public nuisance]); Health & Saf. Code, § 17000 et seq. [the Employee Housing Act]; Health & Saf. Code, § 17910 et seq. [the State Housing Law]; Civ. Code, §§ 3479, 3480 [governing nuisance]; and San Diego County Code § 68.311 [governing sewage disposal].)[10]

Moreover, in light of the Supreme Court's recent clarification of the law regarding implied assumption of the risk in *Knight* v. *Jewett, supra,* 3 Cal.4th

---

[10]In their opening brief, plaintiffs make a cursory argument that some of Murai's evidentiary objections to deposition excerpts from Hruby and Ron Hasegawa, a Murai employee,

296, we find the trial court's grant of summary judgment on implied assumption of the risk grounds, among others, was consistent with our finding that no duty of care may be imposed as a matter of law. (*Id.* at pp. 303-315.) "Even if a trial court's ruling granting summary judgment is based on one particular theory, 'its judgment may nonetheless be upheld if it is "right upon any theory of the law applicable to the case . . . ." [Citation.]' [Citation.]" (*Lucas* v. *Pollock, supra,* 7 Cal.App.4th at p. 673.) No further discussion of any of plaintiffs' subsidiary theories on appeal is required.

### DISPOSITION

The judgments are affirmed.

Kremer, P. J., and Benke, J., concurred.

A petition for a rehearing was denied June 15, 1993, and appellants' petition for review by the Supreme Court was denied August 11, 1993. Mosk, J., was of the opinion that the petition should be granted.

---

were improperly sustained. (§ 437c, subd. (b).) Any error in this regard, even if it occurred, was harmless in light of our discussion of the duty and control issues.