Filed 11/9/23  Chavira v. Mark III Construction CA3

## NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| NELSON CHAVIRA et al., | C096236 |
| Plaintiffs and Respondents, | (Super. Ct. No. 34-2021-00308972-CU-OE-GDS) |
| v. | |
| MARK III CONSTRUCTION, INC., | |
| Defendant and Appellant. | |

In an effort to compel plaintiffs Nelson Chavira, Michael Bird, Michael McCreven, and Mickey Lathum (plaintiffs) to arbitrate their employment-related claims, defendant Mark III Construction, Inc. (Mark III) relied on a declaration from its chief financial officer to show that plaintiffs' purported electronic signatures on the arbitration agreement were authentic.  After sustaining evidentiary objections to the declaration, the trial court concluded that Mark III failed to meet its burden to authenticate the signatures and denied the motion to compel arbitration.  Mark III thereafter filed a motion for reconsideration, which also was denied.

1

Mark III appeals both the order denying its motion to compel arbitration and the order denying its motion for reconsideration. Because we find no error, we affirm.

BACKGROUND FACTS AND PROCEDURE

At various times from 2018 to 2021, plaintiffs worked for Mark III as hourly nonexempt employees. On September 29, 2021, plaintiffs filed this class action lawsuit against Mark III alleging Labor Code violations and other employment-related claims.

Shortly after the lawsuit was filed, defendant Mark III sent plaintiffs a demand for arbitration, alleging that plaintiffs previously signed an arbitration agreement covering their employment-related disputes. Plaintiffs did not respond to the arbitration demand.

On February 4, 2022, Mark III filed a motion to stay the action and compel arbitration of plaintiffs' individual claims. The motion relied on a declaration from Mark III's chief financial officer, John Cassidy, who summarily asserted that each plaintiff had electronically signed an arbitration agreement at the start of their employment.

Attached to the Cassidy declaration were copies of an arbitration agreement providing, with certain exceptions not relevant here, that "any dispute or controversy" between Mark III and its employees shall be resolved through binding arbitration. The signature pages of the arbitration agreements are unsigned, but an appended document entitled "Task Acknowledgment" includes the purported electronic signature of each plaintiff, with a time and date stamp, acknowledging that the signatory "[has] read and understand[s]" the arbitration agreement.

On March 2, 2022, plaintiffs filed a written opposition to the motion. Plaintiffs argued that Mark III failed to provide any admissible evidence demonstrating that plaintiffs' purported electronic signatures were authentic or that plaintiffs otherwise agreed to arbitrate their claims. In support of their opposition, plaintiffs submitted declarations disputing the authenticity of the electronic signatures attached to Cassidy's declaration and averring that they did not remember ever receiving or signing an

2

arbitration agreement and that they would not have signed the agreement if it had been provided to them.

On March 8, 2022, Mark III filed its reply. Mark III argued that each plaintiff signed the arbitration agreement as part of the in-person onboarding process for new employees and that the plaintiffs were aware signing an arbitration agreement was a condition of continued employment with Mark III.

With its reply, Mark III filed a supplemental declaration from John Cassidy (the Cassidy Declaration). In his declaration, Cassidy generally described the company's onboarding procedures, pursuant to which new employees are required to review and sign "all onboarding documentation (including the [e]mployee [h]andbook and [a]rbitration [a]greement)." Cassidy stated that the company uses a product called "Employee Navigator" to allow new employees to electronically sign the onboarding documents using a unique private username and password, to which only the individual employee has access.

Cassidy also explained that the onboarding process for new employees is led by a designated Mark III employee, which, in the case of plaintiffs, was either Jennifer Layton or Thomas Mueller. Cassidy described interactions between plaintiffs and Layton/Mueller that purportedly took place during plaintiffs' onboarding processes. Specifically, Cassidy stated that Layton or Mueller "went over and explained" to plaintiffs each onboarding document, including the arbitration agreement, and then personally watched plaintiffs "review and sign" the agreement.

Plaintiffs objected to the Cassidy Declaration on numerous grounds, including lack of foundation, lack of personal knowledge, and hearsay. The trial court sustained objections to significant portions of the declaration, including (1) all of the statements describing interactions between plaintiffs and Layton/Mueller, and (2) the statement that each plaintiff created his or her own unique private username and password within the Employee Navigator system on their first day of employment. The trial court ruled that

3

the statements were inadmissible because they lacked foundation to show Cassidy had personal knowledge regarding the facts asserted.

On March 15, 2022, the trial court issued a minute order denying the petition. It concluded: "Having sustained [p]laintiffs' objections, the Court concludes that [Mark III] fails to satisfy its burden to show by a preponderance of the evidence that the electronic signature was an 'act of' each [p]laintiff."

Ten days later, Mark III filed a motion for reconsideration asserting that it had "new or different facts that were previously unavailable" to support its motion to compel arbitration. The "new or different facts" consisted of a declaration from Jennifer Layton (the Layton Declaration), the former Mark III employee referenced in the Cassidy Declaration, who purportedly has "first-hand personal knowledge" that each plaintiff signed the arbitration agreement during the onboarding process. Mark III argued that it had a satisfactory explanation for failing to produce the Layton Declaration sooner because Layton has not been employed by Mark III since November 2020, and Mark III only had six calendar days to prepare its reply to plaintiffs' opposition to the motion to compel arbitration.

Plaintiffs opposed the motion for reconsideration, arguing that Mark III failed to present new or different facts, circumstances, or law; that it failed to give a satisfactory explanation for not producing the evidence earlier; and, in any event, that it still failed to properly authenticate the plaintiffs' electronic signatures.

The trial court ultimately denied the motion for reconsideration, concluding that Mark III did not show " 'new or different facts' " or provide a satisfactory explanation as to why it failed to present the Layton Declaration with its original motion. Mark III timely appealed the orders denying its motion to compel arbitration and motion for reconsideration.

4

DISCUSSION

Mark III contends the trial court erred in denying its petition to compel arbitration as well as its subsequent motion for reconsideration.  We find no error.

I

*Order Denying Petition to Compel Arbitration*

A.    *Applicable legal principles*

A petition to compel arbitration under Code of Civil Procedure section 1281.2 is, in essence, a suit in equity seeking specific performance of a contractual agreement to arbitrate the controversy.[1]  (*Juen v. Alain Pinel Realtors, Inc.* (2019) 32 Cal.App.5th 972, 978.)  While there is a strong public policy favoring contractual arbitration of disputes, arbitration is a matter of contract and a party who has not agreed to arbitrate a controversy cannot be compelled to do so.  (§ 1281; *Avery v. Integrated Healthcare Holdings, Inc.* (2013) 218 Cal.App.4th 50, 59.)  Thus, when presented with a petition to compel arbitration, the trial court's first task is to determine whether an agreement to arbitrate the controversy exists.  (*Avery, supra*, at pp. 59-60; § 1281.2.)  The trial court makes this determination using a summary procedure, in which " '[t]he trial court sits as a trier of fact, weighing all the affidavits, declarations, and other documentary evidence, as well as oral testimony received at the court's discretion, to reach a final determination.' "  (*Gamboa v. Northeast Community Clinic* (2021) 72 Cal.App.5th 158, 164 (*Gamboa*), quoting *Engalla v. Permanente Medical Group, Inc.* (1997) 15 Cal.4th 951, 972; § 1290.2.)

Although the burden of persuasion is always on the moving party to prove the existence of a valid arbitration agreement, the burden of production may shift in a three-step process.  (*Gamboa, supra*, 72 Cal.App.5th at pp. 164-165.)  First, the moving party bears the burden of producing " 'prima facie evidence of a written agreement to arbitrate

---

[1]    Undesignated section references are to the Code of Civil Procedure.

the controversy,' " which is satisfied by attaching a copy of the arbitration agreement purporting to bear the opposing party's signature. (*Ibid*.) For this step, it is not necessary for the moving party to follow the normal procedures of document authentication. (*Ibid*.) If the opposing party does not dispute the agreement, nothing more is required for the moving party to meet its burden of persuasion. (*Ibid*.)

If the opposing party disputes the agreement's validity, then in the second step the opposing party bears the burden of producing evidence to challenge its authenticity. (*Gamboa, supra*, 72 Cal.App.5th at p. 165.) The opposing party may satisfy its burden by testifying that the party never saw or does not remember seeing the agreement or that the party never signed or does not remember signing the agreement. (*Ibid*.)

Once the opposing party's burden is satisfied, the burden shifts back to the moving party to prove the existence of an agreement by a preponderance of the evidence. (*Gamboa, supra*, 72 Cal.App.5th at pp. 166-167; *Espejo v. Southern California Permanente Medical Group* (2016) 246 Cal.App.4th 1047, 1060.)

When reviewing an order denying a motion to compel arbitration, our standard of review depends on the basis for the trial court's ruling. (*Fabian v. Renovate America, Inc.* (2019) 42 Cal.App.5th 1062, 1066 (*Fabian*).) If the ruling is based on a finding of fact, we employ the substantial evidence standard. (*Gamboa, supra*, 72 Cal.App.5th at p. 166.) If only a question of law is involved, review is de novo. (*Ibid*.)

When an appellant challenges a trial court's conclusion that it failed to carry its burden of proof at trial, the question for a reviewing court becomes whether the evidence compels a finding in favor of the appellant as a matter of law. (*Sonic Manufacturing Technologies, Inc. v. AAE Systems, Inc.* (2011) 196 Cal.App.4th 456, 466.) " ' "Specifically, the question becomes whether the appellant's evidence was (1) 'uncontradicted and unimpeached' and (2) 'of such a character and weight as to leave no room for a judicial determination that it was insufficient to support a finding.' " ' [Citations.]" (*Fabian, supra*, 42 Cal.App.5th at p. 1067; accord, *Gamboa, supra*,

6

72 Cal.App.5th at p. 166.)  Under such circumstances, it is very difficult for that party to prevail.  (*Gamboa,* at p. 166.)  " ' " 'That is because unless the trial court makes specific findings of fact in favor of the losing [party], we presume the trial court found the [party's] evidence lacks sufficient weight and credibility to carry the burden of proof. [Citations.]  We have no power on appeal to judge the credibility of witnesses or to reweigh the evidence.' " '  [Citation.]"  (*Ibid.*)

B.    *Analysis*

Here, Mark III satisfied its initial prima facie burden by submitting copies of the arbitration agreement purportedly bearing plaintiffs' electronic signatures.  But plaintiffs likewise met their burden to produce evidence challenging the authenticity of the agreement by filing opposing declarations stating that they did not remember ever receiving or signing an arbitration agreement.  Thereafter, Mark III had the burden of proving by a preponderance of the evidence that the electronic signatures were authentic. (*Ruiz v. Moss Bros. Auto Group, Inc.* (2014) 232 Cal.App.4th 836, 846 (*Ruiz*); § 1633.9, subd. (a).)  The trial court found that Mark III failed to meet that burden.  Because the trial court denied the petition based on a finding that Mark III failed to carry its burden, we may reverse that decision only if the evidence compels a finding as a matter of law that plaintiffs' electronic signatures were authentic.  (*Fabian, supra*, 42 Cal.App.5th at p. 1069.)

Since the trial court's ruling on the evidentiary objections to the Cassidy Declaration affects the evidence to be considered in determining whether Mark III satisfied its burden, we begin our analysis by addressing the propriety of that ruling.  We review a trial court's decision to admit or exclude evidence for abuse of discretion. (*Pannu v. Land Rover North America, Inc.* (2011) 191 Cal.App.4th 1298, 1317.)  We conclude that the trial court did not abuse its discretion in sustaining plaintiffs' objections to portions of the Cassidy Declaration.

7

In his declaration, Cassidy made numerous statements about what happened during the onboarding processes at the start of plaintiffs' employment, including that Layton or Mueller "explained" the arbitration agreement to plaintiffs and then "watched [them] review and sign" the agreement. However, Cassidy did not personally witness plaintiffs sign the agreements or verify their electronic signatures. Neither did he provide the requisite preliminary facts to establish that he had personal knowledge of what occurred during plaintiffs' onboarding processes. Nothing in his declaration demonstrates that he had any personal knowledge of (1) the specific interactions between plaintiffs and Layton (or Mueller) that he claims took place or (2) plaintiffs' actions in regard to signing the arbitration agreement. In short, Cassidy describes the onboarding procedures that were supposed to happen, but he does not show that he had any knowledge of whether they did happen.

We acknowledge that Cassidy stated, in conclusory fashion, that he had "personal knowledge of the matters" set forth in his declaration. However, where the facts stated in a declaration do not themselves show personal knowledge, a bare assertion to that effect by the declarant "has no redeeming value and should be ignored." (*Snider v. Snider* (1962) 200 Cal.App.2d 741, 754; accord, *Gamboa, supra*, 72 Cal.App.5th at p. 169; see *Mamou v. Trendwest Resorts, Inc.* (2008) 165 Cal.App.4th 686, 692, fn. 1.)

The only foundational facts offered to support Cassidy's statements were that he is the chief financial officer of Mark III and that he has been employed with Mark III since June 2015. Neither is sufficient to demonstrate that he had personal knowledge regarding the authenticity of plaintiffs' electronic signatures. (*People v. Lewis* (2001) 26 Cal.4th 334, 356 [defining personal knowledge to mean a present recollection of an impression derived from the exercise of one's own senses]; accord, *People v. Valencia* (2021) 11 Cal.5th 818, 831, fn. 12.)

Mark III's reliance on *Taylor v. Financial Casualty & Surety, Inc.* (2021) 67 Cal.App.5th 966 is misplaced. In *Taylor*, the appellate court held that the declarant's

8

status as an officer and director established his personal knowledge to give testimony regarding the nature of the company's business—specifically, whether it included fugitive recovery. (*Id*. at pp. 973-974, 981-983.) But *Taylor* does not mean, as Mark III suggests it does, that every high-ranking corporate officer is deemed to have personal knowledge of every aspect of the company's business. (See *Gamboa, supra*, 72 Cal.App.5th at p. 169.) The holding in *Taylor* is specific to its facts. It has no application to this case, where the issue is whether Cassidy had personal knowledge of the *specific* acts that occurred during plaintiffs' onboarding processes. Accordingly, we conclude the trial court did not abuse its discretion in sustaining plaintiffs' objections to the Cassidy Declaration.[2] (*Gamboa,* at pp. 168-169; Evid. Code, §§ 403, subd. (a)(2), 702, subd. (a).)

Because we conclude the trial court properly excluded certain portions of the Cassidy Declaration, Mark III cannot rely on that evidence to establish that it met its burden of proof. The only remaining question, therefore, is whether the admitted portion of the Cassidy Declaration (and other evidence) compels a finding in favor of Mark III as a matter of law. (*Fabian, supra*, 42 Cal.App.5th at p. 1069.) We find it does not.

While Cassidy explains the onboarding process and how new employees generally are required to review and sign the onboarding documents (including the arbitration agreement), he does not explain how or upon what basis he inferred the electronic signatures at issue were, in fact, "the act of" the plaintiffs. (§ 1633.9; Evid. Code, § 1400.) Indeed, because of the trial court's evidentiary ruling, there was no direct evidence that plaintiffs even participated in the onboarding process or that they created their own unique private usernames and passwords.

---

[2] We decline to consider Mark III's related argument that the trial court erred by refusing to hold an evidentiary hearing because Mark III has not supported that contention with adequate citations to the record. (*Fernandes v. Singh* (2017) 16 Cal.App.5th 932, 943.)

9

It is true that the purported electronic signature of each plaintiff appears, with a time and date stamp, on a "Task Acknowledgment" form stating that the signatory has "read and understand[s]" the arbitration agreement. However, the evidence does not explain how such signatures came to be placed on the forms or show that the dates and times printed on the forms are accurate. There is no evidence showing that the electronic signatures could only have been placed on the forms by plaintiffs. In the face of plaintiffs' declarations disputing the authenticity of their signatures, we conclude the record supports the trial court's finding that Mark III did not meet its burden to show the signatures were authentic. (Evid. Code, § 1401.)

The decision in *Ruiz v. Moss Bros. Auto Group, Inc., supra*, 232 Cal.App.4th 836 is instructive. In *Ruiz*, an employer appealed an order denying its petition to compel arbitration after the trial court ruled that it failed to meet its burden of proving the existence of a valid agreement to arbitrate. (*Id*. at pp. 838-841.) Although the employee's name appeared (with the date and time) on an electronic copy of an arbitration agreement ostensibly presented to all new employees (*id*. at p. 839), the court held that this in itself was insufficient to support a finding that the electronic signature was "the act of" the employee. (*Id*. at pp. 842-844.) As here, there was "a critical gap in the evidence" because the employer did not explain how the electronic signature came to be placed on the agreement and did not show that the electronic signature could only have been placed on the agreement by a person using the employee's " 'unique login ID and password.' " (*Id*. at p. 844.) This same rationale has been followed in other cases with similar facts. (*Fabian, supra*, 42 Cal.App.5th at pp. 1069-1070; *Gamboa, supra*, 72 Cal.App.5th at p. 170; cf. *Espejo v. Southern California Permanente Medical Group, supra*, 246 Cal.App.4th at pp. 1062-1063 [finding a declaration sufficient where it described in detail the steps the employee would have to take to place his or her name on the agreement and showed it could only have been done using the employee's unique

10

user name and password].)  We find these cases persuasive and conclude the trial court did not err in denying the motion to compel arbitration.

II

*Motion for Reconsideration*

Mark III also argues that the trial court erred in denying its motion for reconsideration.  We again disagree.

When an application for an order has been refused in whole or in part, any party affected by the order may apply to the judge who made the order to reconsider the matter and modify, amend, or revoke the prior order.  (§ 1008, subd. (a).)  A motion for reconsideration must be based on new or different facts, circumstances, or law.  (*Yolo County Dept. of Child Support Services v. Myers* (2016) 248 Cal.App.4th 42, 50.)  In addition, the moving party must provide the court with a satisfactory explanation for failing to produce such evidence at an earlier time.  (*Ibid.*)  We review a trial court's ruling on a motion for reconsideration under the abuse of discretion standard.  (*Ibid.*)

The trial court denied Mark III's motion for reconsideration because it was not convinced the Layton Declaration qualifies as "new or different facts" or "circumstances" and because Mark III did not provide a satisfactory explanation for failing to produce the evidence earlier.  Since we agree with the latter conclusion, we find it unnecessary to consider the former.

Mark III's sole justification for failing to offer the Layton Declaration earlier was that, because Layton was not employed by Mark III, it did not have sufficient time to locate her and obtain a signed declaration prior to the court's ruling on the petition.  However, as the trial court found, Mark III failed to provide facts showing that any efforts were made to contact Layton before the motion was filed or, at least, before the hearing on the motion to compel arbitration.  Mark III also never explained why it did not seek a continuance of the hearing if it genuinely believed it needed more time to locate Layton and obtain a declaration from her.  (See, e.g., *New York Times Co. v. Superior*

11

*Court* (2005) 135 Cal.App.4th 206, 215; see also *Lucas v. George T. R. Murai Farms, Inc.* (1993) 15 Cal.App.4th 1578, 1586 [generally the power to determine when a continuance should be granted is within the discretion of the court].) Construing all facts and inferences in favor of the trial court's order, as we must (*Gee v. American Realty & Construction, Inc.* (2002) 99 Cal.App.4th 1412, 1416), we conclude that Mark III has failed to show the trial court abused its discretion in denying the motion for reconsideration. (*New York Times Co. v. Superior Court, supra*, 135 Cal.App.4th at pp. 212-214; *Garcia v. Hejmadi* (1997) 58 Cal.App.4th 674, 690.)

DISPOSITION

The orders denying the motion to compel arbitration and denying the motion for reconsideration are affirmed. Plaintiffs shall recover their costs on appeal. (Cal. Rules of Court, rule 8.278(2).)


　　　　　　　　　　　　　\s\　　　　　　　　　　　,
　　　　　　　　　　　　　Krause, J.



We concur:



　　\s\　　　　　　　　　,
Robie, Acting P. J.



　　\s\　　　　　　　　　,
Mauro, J.