[No. D013655. Fourth Dist., Div. One. June 19, 1992.]

ESTEBAN RAUL LUCAS et al., Plaintiffs and Appellants, v.
PERRY C. POLLOCK, Defendant and Respondent.

**COUNSEL**

Singleton & Dean, Terry Singleton, Shirlyn Daddario and Curtis L. Cooper for Plaintiffs and Appellants.

Testa & Grady, James A. Testa and Susan J. Grady for Defendant and Respondent.

## OPINION

**HUFFMAN, J.**—After the trial court granted summary judgment in favor of defendant and respondent Perry C. Pollock, plaintiffs and appellants Esteban Raul Lucas, Guadalupe Reyes, and Mario Garcia Reyes (collectively plaintiffs), appeal. (Code Civ. Proc., § 437c.) Plaintiffs' action arose out of a fire in temporary migrant farm worker housing constructed on Pollock's land, in which Lucas was gravely injured and plaintiffs Reyeses' decedent, Jorge Reyes (Reyes), was killed. In granting Pollock's motion for summary judgment, the trial court found Pollock had breached no landowner's duties sounding in negligence that were owed to plaintiffs, and was not liable for damages for infliction of emotional distress, nuisance, or breach of the warranty of habitability.

On appeal, plaintiffs argue that triable issues of fact remain as to actual or constructive knowledge on the part of Pollock as to the presence of migrant farm worker encampments on his property, either in the nature of personal knowledge or imputed knowledge through his real estate agent, nonparty John Daley. These arguments are not well taken. We affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

At the time the fire occurred, October 22, 1987, Lucas and Reyes were migrant farm workers residing in an encampment (also known as the cancha) located along a creek bed on 27 acres of undeveloped land owned by Pollock. The structure in which Lucas and Reyes lived was made out of wood and plastic and the only illumination provided was an open-flame candle. When Lucas went to sleep that night, Reyes was still up reading the newspaper. Both had had a few beers that evening. Lucas does not know how the fire started. He woke up in the hospital with grievous burn injuries and learned that Reyes had died in the fire.

The farm where Lucas and Reyes were working at the time of the fire was located adjacent to Pollock's property, which was undeveloped and not used for any purpose, including farming. Pollock acquired this land in 1968 after he foreclosed on a trust deed, and was holding it solely for investment purposes. Pollock never gave anyone permission to enter onto or live on his property, and he testified in his deposition he was unaware that anyone was present there at the time of the fire. Pollock may have looked at the property when he bought it, but he doubts that he ever walked the property.

The area on Pollock's property where the migrant encampments were made was hidden deep within a gully and was obscured by thick underbrush.

The shelters were invisible and inaccessible from the single paved road in the area, or from the southern portion of the adjoining ranch, where Lucas and Reyes worked. The owners of that farm denied that they had ever seen shelters near the Pollock property. Pollock never discussed his property with anyone who worked for the adjoining farms.

In Pollock's deposition, he testified that although there was only one road accessing the property, he surmised there was another access used by the workers because he found that a fence dividing his property from the north had been completely flattened for quite some time, and other fences were also down. However, as to other vehicular access, there really wasn't any except for a rough roadway which would be difficult to drive.

For several years before the fire, Pollock had been attempting to sell the land, and had entered into listing agreements with John Daley, a real estate broker. Between 1976 and 1982, Daley lived on a portion of Pollock's property which he purchased. In the late 1970's or early 1980's, Daley, with Pollock's approval, prepared several preliminary and tentative maps for proposed subdivision of the property. He does not believe that he walked the property in connection with those proposed development plans, and did not see any migrants living along the creek beds during the period that he was living in the house on the property. After he no longer lived on the land, Daley continued his attempts to sell Pollock's land for him in his capacity as a leasing or real estate agent.

Both Daley and Pollock testified at their depositions that the first time they learned of the fire was in the summer of 1988, when Lucas's investigator questioned them about it. The summer after the fire occurred, Pollock wrote a letter to the Oceanside Police Department asking it to assist him in removing the migrant encampments from his property, and described Daley as his agent in the area for that purpose.

Approximately a year after the fire, Lucas's and Reyes's survivors filed their complaint for personal injury and wrongful death against Pollock, as well as numerous other defendants representing the farmers who had employed the plaintiffs and, by amendment, a security service which had patrolled the property. As against Pollock, the causes of action fell into three groups: first, negligence, including premises liability, and negligence per se. A second group involved allegations of negligent and intentional infliction of emotional distress. Nuisance and breach of the warranty of habitability were also pled.

After the action had been on file for some 18 months and discovery had been conducted, Pollock filed his motion for summary judgment. (Code Civ.

Proc., § 437c.) He argued he was entitled to judgment as a matter of law on each of the theories pled, on the reasoning that he owed no legal duty of care to the plaintiffs, even if the incident did in fact occur on land which he owned (which he admitted for purposes of pursuing the motion). Citing *Rowland* v. *Christian* (1968) 69 Cal.2d 108, 119 [443 P.2d 561 [32 A.L.R.3d 496], Pollock argued he had acted reasonably in the management of his property in view of the probability of injuries to others, even trespassers.

After a short continuance was granted to allow plaintiffs to conduct further discovery and after further papers were submitted (including Pollock's evidentiary objections—granted in part and overruled in part—to the supplemental declaration submitted by plaintiffs' attorney), the motion was granted. At oral argument, the trial court commented that plaintiffs had made no showing other than speculation about the extent of Pollock's knowledge as a landowner of the conditions on the property. With respect to the extent of Daley's knowledge as an agent of Pollock, the trial court stated:

"But all of the rest of it, with regard to making that quantum leap from Daley to the land owner, is based on speculation. That's where it all failed. I don't care what Daley knew. Pollock didn't know. And that's what I found. And that's the end of it. And the telephonic [granting the motion] stands. Thank you very much."

Plaintiffs timely appealed the summary judgment.[1]

## DISCUSSION

■ A prerequisite to the granting of summary judgment is:

---

[1]As part of their designation of the appellate record, plaintiffs supplied to this court a number of documents including discovery materials and copies of the entire depositions of several parties and witnesses, in the form of an appellants' appendix. (Cal. Rules of Court, rule 5(d).) At a later time, plaintiffs sought to augment the record to include, in the form of a second appellants' appendix, the same material plus a number of declarations and other documents prepared after the time of the motion. After first granting the augmentation, this court then struck the second appendix filed May 30, 1991, along with the opening brief referring to such materials. (Orders of Aug. 21, 1991, and June 21, 1991.) Plaintiffs were offered the opportunity to seek to augment the record on appeal to include portions of these materials upon a showing of lodgment with the trial court of the materials included in the appendix. Plaintiffs failed to make such a showing and the application for augmentation was denied by order of September 17, 1991. A new opening brief was then filed.

Therefore, the record which we have considered consists of the clerk's and reporter's transcripts. Although the designation of the first appellants' appendix as part of the appellate record was appropriate (Cal. Rules of Court, rule 5(d)), we have not found it proper to consider any of the materials included in the appendix (even if they were not stricken by the later order striking them as duplicated in the second appendix), because there is no showing in the record that any of those materials were submitted to the trial court in connection with the papers supporting or opposing the motion for summary judgment.

" '. . . all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to judgment as a matter of law.' [Citations.] [Where] a defendant seeks summary judgment, his declarations and evidence must either establish a complete defense to plaintiff's action or demonstrate an absence of an essential element of plaintiff's case. If defendant establishes the foregoing, and the plaintiff's declaration in reply does not show that there is a triable issue of fact with respect to that defense or that an essential element exists, the summary judgment should be granted. [Citation.]" (*Dolquist* v. *City of Bellflower* (1987) 196 Cal.App.3d 261, 266 [241 Cal.Rptr. 706], italics omitted.)

Even if a trial court's ruling granting summary judgment is based on one particular theory, "its judgment may nonetheless be upheld if it is 'right upon any theory of the law applicable to the case . . . .' [Citation.]" (*Farron* v. *City and County of San Francisco* (1989) 216 Cal.App.3d 1071, 1074 [265 Cal.Rptr. 317].)

Here, plaintiffs' opposition to Pollock's motion for summary judgment focused upon allegations of Pollock's actual knowledge of conditions on the property, or imputed knowledge on the basis of Daley's familiarity with the property as a former resident of the area and as a real estate agent attempting to sell the property. We first discuss the issue of the extent of knowledge which Pollock had, as shown by this record, and then discuss the implications of any such knowledge: whether it gave rise to a particular duty to do something, and to whom any such duty was owed.

Plaintiffs contend the trial court misapplied basic rules of agency when it commented at the hearing on the motion, "I don't care what Daley knew. Pollock didn't know. . . . And that's the end of it. . . ." On the issue of Pollock's constructive knowledge, plaintiffs state the general principle that an agent's knowledge is considered and imputed as the knowledge of the principal " 'only when the former acquires it in the course of his agency.' " (*Redman* v. *Walters* (1979) 88 Cal.App.3d 448, 454 [152 Cal.Rptr. 42]; Civ. Code, § 2332.)[2] Plaintiffs then rely on the general rule that it is normally a factual question whether certain facts concern the subject matter of the agency and were within its scope. (*Maron* v. *Swig* (1952) 115 Cal.App.2d 87, 90 [251 P.2d 770].) Citing section 2079,[3] plaintiffs argue that Daley, as Pollock's real estate agent, was under a duty to inform Pollock of matters in

[2]Civil Code section 2332 provides: "As against a principal, both principal and agent are deemed to have notice of whatever either has notice of, and ought, in good faith and the exercise of ordinary care and diligence, to communicate to the other."

All statutory references are to the Civil Code unless otherwise specified.

[3]Section 2079 provides in pertinent part that "[i]t is the duty of a real estate broker . . . *to a prospective purchaser of residential real property* . . . to conduct a reasonably competent

connection with the agency which would affect the marketability or value of Pollock's real property. The presence of a migrant farm worker encampment is argued to be such a matter affecting the value of real property.

Regarding their claims of Pollock's actual knowledge, plaintiffs point out the language in *Uccello v. Laudenslayer* (1975) 44 Cal.App.3d 504, 514 [118 Cal.Rptr. 741, 81 A.L.R.3d 628], footnote 4: "a defendant's actual knowledge may be shown, not only by direct evidence, but also by circumstantial evidence. Hence, his denial of such knowledge will not, per se, prevent liability. [Citations.]" They go on to argue that landowners may be held liable for failure to correct within a reasonable time such defects in the property as would have been revealed by a reasonable inspection. (*Both* v. *Harband* (1958) 164 Cal.App.2d 743, 746 [331 P.2d 140].) From all of these rules, plaintiffs argue, a triable issue of fact is created as to the existence of knowledge on the part of Pollock, impliedly creating a duty to make safe his land from the dangerous conditions which caused the fire. (§ 1714, subd. (a), in pertinent part: "Every one is responsible, not only for the result of his willful acts, but also for an injury occasioned to another by his want of ordinary care or skill in the management of his property . . . .")

We find several flaws with plaintiffs' reasoning. ▮ First, although the evidence showed Pollock had designated Daley as his agent in the proposed sale of the property, the scope of that agency created duties in Daley only to Pollock as the principal and to prospective purchasers of the property. Under the plain language of section 2079, duties are owed by a broker to "a prospective purchaser of residential real property." (§ 2079; see *Smith* v. *Rickard* (1988) 205 Cal.App.3d 1354 [254 Cal.Rptr. 633].) Plaintiffs have made no showing that third party trespassers or bystanders on the property were entitled to any particular duties arising out of that agency, which was created for a limited purpose.

Further on this point, the authority cited by plaintiffs, *Redman v. Walters*, *supra*, 88 Cal.App.3d 448, 454, recognizes a lack of connection between persons such as these plaintiffs and Pollock as landowner:

"Moreover, such a rule of presumed knowledge of the principal will apply only in respect of a *third person* dealing with the agent. 'Imputation of knowledge is based upon the necessities of general commercial relationships, and where a principal acts through an agent, a *third person* dealing with such agent is entitled to rely upon his knowledge and notice and it binds

---

and diligent visual inspection of the property offered for sale and to disclose to that prospective purchaser all facts materially affecting the value or desirability of the property that such an investigation would reveal . . . ." (Italics added.)

the principal. . . . [*T*]*he rule has never been applied to protect one who has had no dealings with the principal through an agent or otherwise.*' [Citation.]" (*Redman* v. *Walters, supra,* 88 Cal.App.3d at p. 454.)

Here, the injured plaintiffs had no dealings with Pollock either directly or through Daley. In opposition to Pollock's motion, plaintiffs were able to raise only speculation and suggestions that Pollock "must have known" about the existence of the encampments. (See *Uccello* v. *Laudenslayer, supra,* 44 Cal.App.3d at p. 514, fn. 4.) However, such evidence is not sufficient to justify an inference of actual knowledge, nor is the same equivocal evidence as to Daley sufficient to support an inference of constructive knowledge on Pollock's part. (*Ibid.*) Thus, Daley did not know enough on this subject to make any difference here.

Moreover, the evidence on which the plaintiffs rely to show notice of the presence of the encampment (i.e., Pollock's knowledge that an alternative access route to the property had apparently been developed and his admission after the fire in the letter to the police department that farm workers lived on the property, along with Daley's familiarity with the property) does not as a matter of law establish that Pollock, as landowner, had a duty to these plaintiffs to make the premises reasonably safe for the purposes for which they were used. As the court stated in *Uccello* v. *Laudenslayer, supra,* 44 Cal.App.3d 504, 512, "a landlord should not be held liable for injuries from conditions over which he has no control." Manifestly, Pollock had no control over the existence of hazards in the migrant farm workers' encampment, which he had not authorized to be built, and the dangers of which all the evidence showed he lacked actual or constructive knowledge.

In conclusion, even if we assume that Pollock had actual or constructive knowledge of the presence of migrant encampments upon his property, we are unable to conclude as a matter of law from such evidence (if any) that a duty existed on Pollock's part to take steps to correct or prevent the particular dangers which led to plaintiffs' injuries in this case, specifically the danger of fire in the temporary structures. Pollock's status as landowner did not create in him a duty to insure the well being of these third parties upon his property, nor any duty to protect them from their own activities, nor any duty to police an area in which he was conducting no activity whatsoever. (See *Uccello* v. *Laudenslayer, supra,* 44 Cal.App.3d 504; BAJI No. 8.00.) Nor did the actual condition of Pollock's land in its undeveloped state, or his management of it, contribute to or cause the accident which injured the plaintiffs. (§ 1714.) The issue presented by this motion for summary judgment is whether any knowledge on Pollock's part, if shown, created a

duty on the theory that his conduct was unreasonable in light of any such knowledge. The trial court's grant of summary judgment correctly resolved that issue.

## DISPOSITION

The judgment is affirmed.

Kremer, P. J., and Benke, J., concurred.

A petition for a rehearing was denied July 8, 1992, and appellants' petition for review by the Supreme Court was denied September 17, 1992. Mosk, J., was of the opinion that the petition should be granted.