[No. D026302. Fourth Dist., Div. One. July 7, 1998.]

MANUEL REYES et al., Plaintiffs and Appellants, v.
ICHIRO KOSHA et al., Defendants and Respondents.

**COUNSEL**

Singleton & Associates, Terry Singleton, Horacio Barraza and Thomas M. Fiorello for Plaintiffs and Appellants.

McIntosh, Blay, Box & Gomes, David A. Gomes, Horvitz & Levy, Peter Abrahams and H. Thomas Watson for Defendants and Respondents.

## OPINION

**O'NEILL, J.**[*]—Humberto Barcenas died and Manuel Reyes was injured as a result of a fire in an encampment occupied by Barcenas, Reyes and other migrant workers on land leased and farmed by defendant Ichiro Kosha (Kosha). Reyes, his wife, and Barcenas's widow and children (collectively plaintiffs) filed the instant action against Kosha individually and doing business as Kosha Farms, pleading negligence and other theories of liability. The court granted Kosha's motion for summary judgment, primarily on the ground Kosha owed plaintiffs no duty of care. Plaintiffs contend Kosha breached both common law duties and statutory duties imposed by the Employee Housing Act (Health & Saf. Code,[1] § 17000 et seq.) (the EHA). We conclude there are triable issues of fact as to whether Kosha breached a statutorily recognized duty to provide Reyes and Barcenas safe housing, and whether such breach of duty was a legal cause of Barcenas's death and Reyes's injury. Accordingly, we reverse the judgment as to plaintiffs' causes of action for negligence and negligence per se.

### FACTUAL AND PROCEDURAL BACKGROUND

Reyes and Barcenas were laborers on a strawberry farm operated by Kosha and his brother Shig Kosha (Shig). Kosha leased the farm property from a third party. Shig managed the farm's day-to-day operations.

From 1981 through February 1994 Kosha allowed his farm employees to live rent-free in an encampment in a ravine on his leased property. During the farming season, 50 to 90 workers lived in the ravine in shacks made of cardboard, wood and plastic scrap materials. Shig lived in a house at the entrance to the farm property and supervised the farm workers. He allowed the workers to take scrap materials from the farm to use in the construction of their huts. Reyes and Barcenas resided in the camp at the time of the fire.

Shig patrolled the camp to ensure it was kept clean and that only employees of Kosha Farms resided there. He excluded women and all other nonemployees from the camp, including relatives of the resident workers. Kosha assigned each of the camp residents a number and required him to affix it to his hut.

Kosha provided the workers portable toilets and a dumpster on the farm property, but did not provide electricity to the camp. Shig had the workers

---

[*]Judge of the San Diego Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

[1]All statutory references are to the Health and Safety Code unless otherwise specified.

dig a trench to run a waterline from the farm's irrigation system to the camp where they installed two faucets and a makeshift shower. Shig suggested the camp residents who participated in the construction of the trench should charge the ones who did not a fee of $20. Kosha provided a mailbox where the workers could receive their mail and allowed a caterer to come on the farm to sell food to the workers. The caterer extended credit to the workers and Shig helped him collect his money.

On the night of January 23, 1994, Reyes went to sleep in his hut about 9 p.m. Sometime later, a fire started in Barcenas's hut and spread to Reyes's hut, killing Barcenas and severely injuring Reyes.

Plaintiffs filed the instant action against Kosha, pleading theories of negligence (general negligence, premises liability and negligence per se), nuisance, breach of implied warranty of habitability, intentional and negligent infliction of emotional distress, civil conspiracy and loss of consortium. Kosha moved for summary judgment or, alternatively, summary adjudication of each of the causes of action in plaintiffs' complaint.

The court granted summary judgment, ruling Kosha owed no common law duty of care "to warn or make safe the conditions in the ravine[]" because Reyes and Barcenas "voluntarily chose to live in the ravine, and . . . the risk of fire was an obvious risk." The court concluded this absence of duty eliminated plaintiffs' causes of action for negligence, premises liability, negligent infliction of emotional distress, and nuisance. The court found plaintiffs' claim for intentional infliction of emotional distress was without merit because plaintiffs "failed to establish any outrageous conduct on behalf of [Kosha]," and plaintiffs' claim for breach of the implied warranty of habitability was without merit because plaintiffs failed to establish a landlord-tenant relationship. The court concluded plaintiffs could not maintain their conspiracy claim because Kosha breached no duty owed to them and there was no evidence Kosha acted in concert with others who committed wrongful acts against them. Regarding plaintiffs' cause of action for negligence per se, the court ruled that plaintiffs failed to establish "the violation of [the EHA was] the proximate cause of plaintiffs' injuries."

DISCUSSION

■ On appeal from a ruling on a motion for summary judgment or adjudication, the appellate court conducts its own independent review of the moving and opposition papers and applies the same standard as the trial court in determining whether the motion was properly granted. The appellate court is not bound by the trial court's stated reasons for its ruling on the motion, as the appellate court reviews only the ruling and not its rationale.

(*California Aviation, Inc.* v. *Leeds* (1991) 233 Cal.App.3d 724, 730-731 [284 Cal.Rptr. 687]; *Lunardi* v. *Great-West Life Assurance Co.* (1995) 37 Cal.App.4th 807, 819 [44 Cal.Rptr.2d 56].)

## I. *Duty*

Plaintiffs contend Kosha owed a duty under the common law and the EHA to maintain the labor camp on his leased premises in a reasonably safe condition.

"The question of 'duty' is decided by the court, not the jury. [Citation.]" (*Ballard* v. *Uribe* (1986) 41 Cal.3d 564, 572, fn. 6 [224 Cal.Rptr. 664, 715 P.2d 624].) Duty is not an immutable fact, but rather an expression of policy considerations leading to the legal conclusion that a plaintiff is entitled to a defendant's protection. (*Parsons* v. *Crown Disposal Co.* (1997) 15 Cal.4th 456, 472 [63 Cal.Rptr.2d 291, 936 P.2d 70].)

The most important policy consideration in determining whether a duty exists is the foreseeability of injury to another. (*Krongos* v. *Pacific Gas & Electric Co.* (1992) 7 Cal.App.4th 387, 394 [9 Cal.Rptr.2d 124]; *Osborn* v. *Mission Ready Mix* (1990) 224 Cal.App.3d 104, 122 [273 Cal.Rptr. 457].) Unquestionably, the risk of fire in the camp was foreseeable, as the workers lived in highly flammable structures and used an open flame for lighting and heating.

In addition to foreseeability, courts consider the following factors in determining the existence and scope of duty: "(1) the degree of certainty that the plaintiff suffered injury; (2) the proximity between the defendant's conduct and the injury suffered; (3) the moral blame attached to the defendant's conduct; (4) the policy of preventing future harm; (5) the extent of the burden to the defendant and consequences to the community of imposing a duty to exercise care with resulting liability for breach; and (6) the availability of insurance for the risk involved. [Citations.]" (*Krongos* v. *Pacific Gas & Electric Co., supra,* 7 Cal.App.4th at pp. 394-395; *Rowland* v. *Christian* (1968) 69 Cal.2d 108, 113 [70 Cal.Rptr. 97, 443 P.2d 561, 32 A.L.R.3d 496].)

Each of these factors militates in favor of imposing a duty on Kosha in this case. Plaintiffs' injuries are undisputed and there is a close connection between the harm they suffered and Kosha's allowance or maintenance of the camp on his property. Moral blame attaches generally to the failure to provide habitable living conditions where there is a duty to do so. The policy of preventing the type of harm that occurred has been recognized by the Legislature, which enacted the EHA to protect farm workers from unsafe and

unhealthy living conditions provided by employers like Kosha.[2] The Legislature has determined that those who provide employee housing should bear the burden of ensuring it meets minimum health and safety standards for the protection of its inhabitants and the community. Finally, the risks associated with the maintenance of unsafe employee housing are insurable.

At oral argument, Kosha contended violation of the EHA does not give rise to a private right of action unless the violation also breaches a common law duty existing independently of the EHA. We need not decide the merit of that contention because we do not view the EHA as creating a new duty of care. ■ In enacting the EHA, the Legislature essentially weighed the policy considerations courts consider in determining whether a duty exists and concluded those considerations militate in favor of imposing a duty on employers and other owners of employee housing to provide housing which is reasonably safe and healthy. In doing so, the Legislature *recognized* rather than *created* a duty. The EHA defines the standard of conduct required to satisfy that duty.

■ Kosha cites the opinions of this court in *Lucas* v. *Pollock* (1992) 7 Cal.App.4th 668 [8 Cal.Rptr.2d 918] (*Pollock*) and *Lucas* v. *George T.R. Murai Farms, Inc.* (1993) 15 Cal.App.4th 1578 [19 Cal.Rptr.2d 436] (*Murai*) for the proposition that he owed no duty to protect his workers from the risk of fire in the camp because the risk was obvious to them.

In *Pollock*, one migrant worker was killed and another was severely injured when their makeshift hut in a migrant worker camp caught fire. The property on which the camp was located was undeveloped and was not used for farming or any other purpose. The owner held the property for investment purposes only. He never gave anyone permission to enter or live on the

---

[2]As discussed more fully in part II of this opinion, the EHA requires every person who operates or maintains employee housing to comply with certain health and safety standards. (§ 17037.) The Legislature issued the following statement of intent regarding 1985 amendments to section 17008 of the EHA: " 'The Legislature finds and declares that protections provided to tenants of farm labor camps help ensure that minimum health standards are maintained in those camps, thus protecting the health of the farm laborers and the community. The Legislature further finds and declares that those protections have been historically found to be necessary and still are necessary today because of the extreme health violations frequently found to exist in farm labor camps.

" 'The Legislature finds and declares that despite added statutory protections, violations of health standards continue to exist in farm labor camps. Protections for tenants who complain about substandard conditions have been weakened by the use of summary unlawful detainer actions by camp owners against complaining tenants. Protections for tenants who live in labor camps owned by nongrowers have been weakened by regulations which severely limit the inspections of nongrower-owned camps, contrary to legislative intent. It is the intent of the Legislature to improve conditions in labor camps by closing these loopholes that have developed in the law's enforcement.' " (Stats. 1985, ch. 900, § 1, p. 2870, quoted in Historical and Statutory Notes, 40A West's Ann. Health & Saf. Code (1998 pocket supp.) foll. § 17008, p. 108.)

property and was unaware anyone was living on it at the time of the fire. (*Pollock, supra,* 7 Cal.App.4th at p. 670.)

Affirming summary judgment in favor of the landowner in *Pollock,* this court noted the evidence failed to raise a triable issue of fact as to whether the owner, Pollock, had actual or constructive knowledge of the camp on his property. (*Pollock, supra,* 7 Cal.App.4th at pp. 673-675.) The court then stated: "[E]ven if we assume that Pollock had actual or constructive knowledge of the presence of migrant encampments on his property, we are unable to conclude . . . that a duty existed on Pollock's part to take steps to correct or prevent . . . the danger of fire in the temporary structures. Pollock's status as landowner did not create in him a duty to insure the well being of these third parties upon his property, nor any duty to protect them from their own activities, nor any duty to police an area in which he was conducting no activity whatsoever. [Citation.]" (*Id.* at p. 675.)

*Pollock* is distinguishable from the instant case. Unlike the owner in *Pollock,* Kosha was aware of the camp on his developed farm land, and he exercised control over the camp. He gave his workers permission to live there because they could not afford to pay rent elsewhere. Kosha benefited economically from the presence of the camp on his land as it provided a reliable source of inexpensive labor. Pollock, on the other hand, was unaware a migrant worker camp was present on his property, had no interest in employing its inhabitants, and realized no benefit from its presence. Summary judgment was appropriate in *Pollock* not so much because the workers assumed the risk of living in an unsafe camp, but because the landowner "had no control over the existence of the hazards in the migrant farm workers' encampment, *which he had not authorized to be built,* and the dangers of which all the evidence showed he lacked actual or constructive knowledge." (*Pollock, supra,* 7 Cal.App.4th at p. 675, italics added.) In short, Pollock did not owe the statutorily recognized duty to protect the workers from unsafe conditions in the camp because he did not maintain or operate employee housing.

In an appeal from the same case as *Pollock,* this court rejected the plaintiffs' contention that the owners of property adjoining the land on which the migrant worker encampment was located owed the plaintiffs a duty to make the camp premises safe or to warn of the danger of flammable temporary dwellings. The court concluded there was insufficient evidence of control over the camp premises by the adjoining landowners to impose a duty on them. The court noted: " 'The law of premises liability does not extend so far as to hold [the landowner] liable merely because his property exists next to adjoining dangerous property and it took no action to influence

or affect the condition of such adjoining property.'" (*Murai, supra,* 15 Cal.App.4th at p. 1590, quoting *Donnell* v. *California Western School of Law* (1988) 200 Cal.App.3d 715, 720 [246 Cal.Rptr. 199].)

*Murai* also cited the general rule that a landowner is not obliged " 'to protect the invitee against dangers which are known to him, or which are so apparent that he may reasonably be expected to discover them and be fully able to look out for himself. [Citations.]' " (*Murai, supra,* 15 Cal.App.4th at p. 1590.) *Murai* stated: "[I]t makes no sense to impose a duty on [the adjoining landowners] to protect [the injured worker and decedent] from the from the consequences of their own activity. . . . The danger of the structures at the [camp] was obvious and was not in any sense latent or concealed, especially to those persons who built the structures and used them. Consequently, we see no basis for the imposition of a duty on the ranch owners to warn of dangers inherent in the use of structures *just off their premises,* nor any duty to make those structures safe for the inhabitants." (*Id.* at pp. 1590-1591, italics added.)

*Murai* is also distinguishable from the instant case. The adjoining landowners in *Murai* owed no duty to protect the workers in the camp because, unlike Kosha, they did not own or possess the land on which the camp was located and did not exercise sufficient control over the camp to be deemed to have been maintaining or operating employee housing. Therefore, they did not owe the camp inhabitants a duty to provide reasonably safe housing.

The language in *Pollock* and *Murai* regarding the absence of a landowner's duty to warn or protect against obvious dangers must be considered in the factual context of (1) an absentee landowner with no knowledge of a migrant workers' camp on his property (*Pollock*) and (2) adjoining landowners who exercised insufficient control over the camp to owe any duty to make it safe (*Murai*). ▮ Although, as a general rule, a landowner owes no duty to remedy or warn of an obvious danger on his or her property, there are exceptions to that rule. " '[I]t is foreseeable that even an obvious danger may cause injury, if the practical necessity of encountering the danger, when weighed against the apparent risk involved, is such that under the circumstances, a person might choose to encounter the danger. The foreseeability of injury, in turn, when considered along with various other policy considerations such as the extent of the burden to the defendant and consequences to the community of imposing a duty to remedy such danger [citation] may lead to the *legal* conclusion that the defendant' owed a duty of due care to the person injured. [Citation.]" (*Krongos* v. *Pacific Gas & Electric Co., supra,* 7 Cal.App.4th at p. 393.)

▮ Here, there is evidence that the practical necessity to Kosha's workers of living rent-free in the camp, when weighed against the apparent

risk involved, was such that they willingly chose to encounter the danger. The foreseeability of their doing so, along with the other policy considerations we have noted, leads to the legal conclusion that Kosha owed his workers a duty to provide reasonably safe housing. Standing alone, the fact that Reyes and Barcenas chose to live in the camp despite the obvious danger of fire does not negate Kosha's duty. ██ Rather, it goes to the question of comparative fault, a question to be decided by the trier of fact.[3]

██ The duty Kosha owed is analogous to the duty an owner or occupant of real property owes to a worker on the premises: ██ " 'The general rule in that regard is that an owner or occupier of premises, who, by invitation express or implied, whether the invitation is pursuant to a written contract or otherwise, induces, or knowingly permits, a workman to enter the premises for the performance of duties mutually beneficial to both parties, is required to use reasonable care to protect the workman by supplying him with a reasonably safe place in which to work.' [Citation.]" (*Kingery* v. *Southern Cal. Edison Co.* (1961) 190 Cal.App.2d 625, 632 [12 Cal.Rptr. 173].)

██ Kosha knowingly permitted his workers to inhabit the land in his possession in connection with their employment, an arrangement which was mutually beneficial to both Kosha and the workers. By allowing his workers to reside on the property where the work was performed, exercising substantial control over their residency, and receiving a direct economic benefit from the arrangement, Kosha assumed the duty to maintain the camp in a reasonably safe condition. The court erred in concluding Kosha owed plaintiffs' no duty of care.

## II. *Negligence Per Se*

██ Plaintiffs contend Kosha was negligent per se because he breached a statutory duty imposed by the EHA to provide Reyes and Barcenas with habitable housing.

██ "Negligence may be presumed if (1) the defendant violated a statute; (2) the violation proximately caused injury to the plaintiff; (3) the injury

---

[3]As one court explained: "[T]he 'obvious danger' exception to a landowner's ordinary duty of care is in reality a recharacterization of the former *assumption of the risk* doctrine, i.e., where the condition is so apparent that the plaintiff must have realized the danger involved, he assumes the risk of injury even if the defendant was negligent. . . . [T]his type of assumption of the risk has now been merged into comparative negligence. In addition, [case] authority makes it clear that while a readily apparent danger may relieve the property owner of a duty to *warn*, it no longer necessarily absolves him of a duty to *remedy* that condition. [Citation.]" (*Donohue* v. *San Francisco Housing Authority* (1993) 16 Cal.App.4th 658, 665 [20 Cal.Rptr.2d 148].)

resulted from an occurrence which the statute was designed to prevent; and (4) the plaintiff was one of the class of persons for whose protection the statute was adopted. [Citations.]" (*Nowlon* v. *Koram Ins. Center, Inc.* (1991) 1 Cal.App.4th 1437, 1441-1442 [2 Cal.Rptr.2d 683], fn. omitted; Evid. Code, § 669.)

"Whether the injury involved resulted from an occurrence of the nature which the statute was designed to prevent and whether plaintiff was one of the class of persons for whose protection the statute was adopted are questions of law. [Citations.] Whether the party to an action has violated a statute is generally a question of fact. [Citation.] Similarly, the question whether the violation has proximately caused or contributed to the plaintiff's injury is usually a matter for jury decision. [Citation.] ▮▮▮ The statutory violation must be the proximate cause of the injury to constitute negligence per se. [Citation.]" (*Michael R.* v. *Jeffrey B.* (1984) 158 Cal.App.3d 1059, 1066 [205 Cal.Rptr. 312].)[4]

▮ The EHA defines the standard of care required of one who owes a duty to provide reasonably healthy and safe employee housing. Section 17008 defines "employee housing." In pertinent part, section 17008, subdivision (a) states:

" 'Employee housing,' as used in this part, means any portion of any housing accommodation, or property upon which a housing accommodation is located, if all of the following factors exist:

---

[4]As noted, Kosha contended at oral argument that the violation of a statute does not give rise to a private right of action unless the Legislature expressly provides for one or the violation of the statute constitutes breach of a common law duty giving rise to a right of action independent of the statute. We note there is a split of authority on the issue of whether the doctrine of negligence per se can be used to charge a defendant with a duty created by the statute he or she violated, or whether the defendant's violation of the statute only gives rise to a presumption of common law negligence—i.e., breach of a common law duty that exists independent of the statute. (See, e.g., *Cheong* v. *Antablin* (1997) 16 Cal.4th 1063, 1076, 1078 [68 Cal.Rptr.2d 859, 946 P.2d 817] (separate conc. opns. of Werdergar, J., and Chin, J.); *California Service Station etc. Assn.* v. *American Home Assurance Co.* (1998) 62 Cal.App.4th 1166, 1177-1180 [73 Cal.Rptr.2d 182].) We do not decide the issue here because we have concluded the EHA does not create a duty but rather defines the standard of conduct required to satisfy a preexisting common law duty of care. When a statute is used as evidence of the standard of care in a negligence action, it "does not create a new private right to sue. The statute instead serves a subsidiary function of providing evidence of an element of a preexisting common law cause of action. [Such] use of statutes . . . presents an issue quite distinct from the issue of whether a regulatory statute creates a wholly new private right to sue." (*Crusader Ins. Co.* v. *Scottsdale Ins. Co.* (1997) 54 Cal.App.4th 121, 125 [62 Cal.Rptr.2d 620].)

"(1) The accommodations consist of any living quarters, dwelling, board-inghouse, tent, bunkhouse, maintenance-of-way car, mobilehome, manufac-tured home, recreational vehicle, travel trailer, or other housing accommodations, maintained in one or more buildings or one or more sites, and the premises upon which they are situated or the area set aside and provided for parking of mobilehomes or camping of five or more employees by the employer.

"(2) The accommodations are maintained in connection with any work or place where work is being performed, whether or not rent is involved."

The undisputed facts in this case establish that the migrant worker camp on Kosha's farm was "employee housing" within the meaning of section 17008, subdivision (a). The camp consisted of "living quarters, dwelling . . . or other housing accommodations maintained [on an] area set aside and provided . . . for camping of five or more employees by the employer [Kosha]." (§ 17008, subd. (a)(1).) Because the sole purpose of the camp was to provide a place for workers to live while they were employed by Kosha, as established by the fact that only Kosha's employees were allowed to stay in the camp, the camp clearly was "maintained in connection with" agricultural work on Kosha's farm.

Section 17037 provides that "[e]very person, or the agent or officer thereof, constructing, operating, or maintaining employee housing shall comply with the requirements of this part, with building standards published in the State Building Standards Code relating to employee housing, and with the other regulations adopted pursuant to this part."

Section 17001 provides: "Buildings used for human habitation, and buildings accessory thereto, within employee housing shall comply with the building standards published in the State Building Standards Code relating to employee housing and with the other regulations adopted pursuant to this part, unless a local ordinance prescribing minimum standards . . . which is equal to such regulations is applicable. . . . [I]f such a local ordinance is applicable to buildings used for human habitation, and buildings accessory thereto, within employee housing, these buildings shall comply with the construction and erection provisions of the ordinance."

Unquestionably, the camp on Kosha's property failed to comply with any governmental building standards as required by the EHA, and Reyes and Barcenas were within the class of persons the EHA was adopted to protect. We further conclude the fire resulting in Reyes's injury and Barcenas's death was the type of occurrence the EHA was designed to prevent. The obvious purpose of the statutory requirement that employee housing meet

standards published in the State Building Standards Code, or comparable local standards, is to ensure that employees are housed in safe and healthy accommodations. Fire safety is a basic objective of governmental building standards. (See *Building Industry Assn.* v. *City of Livermore* (1996) 45 Cal.App.4th 719, 733-736 [52 Cal.Rptr.2d 902]; *Soderling* v. *City of Santa Monica* (1983) 142 Cal.App.3d 501, 508-509 [191 Cal.Rptr. 140].) Accordingly, the EHA was designed in part to prevent injury from fire caused by the failure of employee housing to meet governmental fire safety standards.

Kosha contends the EHA does not apply to him because he did not "maintain" the employee housing on his farm. To the extent the EHA applied to the camp, Kosha contends it was the migrant residents who were required to comply with it.

As noted, section 17037 requires every person who *operates* or *maintains* employee housing to comply with the requirements of the EHA. The evidence in the record raises a triable issue of fact as to whether Kosha operated and maintained the camp. Kosha strictly controlled who lived in the camp, allowing only his workers to reside there. In his deposition, Reyes testified that Kosha's permission was required to live in the camp. The Kosha brothers provided the workers portable toilets and organized the workers to run a waterline to the camp. Kosha provided materials for them to install faucets and showers in the camp and provided them a mailbox so they could receive mail at the farm. Kosha allowed a caterer to come to the camp to sell food to the workers and Shig advised the workers to pay their accounts with the caterer. Ten years before the fire, Kosha told his workers they could no longer camp in the ravine because the State Housing Department had inspected the camp and informed him he had to have a permit to provide living quarters to his workers. A city inspector also told Kosha his workers were not allowed to camp in the ravine. Kosha understood that to obtain a state permit he would have to upgrade the camp by providing such basic elements of safe housing as electricity, running water and toilets.

From this evidence, a trier of fact could reasonably conclude that Kosha "maintained" or "operated" the employee housing on his property and therefore was in violation of the statutory requirement that such housing meet building code standards.[5]

The evidence also raises a triable issue of fact as to whether any violation of the EHA by Kosha was a proximate cause of Barcenas's death and

---

[5]If the trier of fact were to conclude that Kosha did not maintain or operate the employee housing on his farm within the meaning of the EHA, and therefor did not violate the EHA, Kosha's breach of the common law duty he owed plaintiffs—i.e., his negligence—would not be *presumed.* However, the trier of fact could still find Kosha breached his common law duty of care.

Reyes's injury. ■■ "Proximate causation exits where the [hazardous] condition or the violation of statute is a substantial factor in causing the injury; that is, there is reason to believe the absence of the condition or compliance with the statute would have prevented or lessened the likelihood of injury. [Citation.]" (*City of Los Angeles* v. *Shpegel-Dimsey, Inc.* (1988) 198 Cal.App.3d 1009, 1021 [244 Cal.Rptr. 507].)

■■ A trier of fact could reasonably find that compliance with the EHA would have lessened the likelihood of the fire that injured Reyes and killed Barcenas, an event which was reasonably foreseeable in light of the conditions at the camp. Had Kosha provided employee housing that complied with the EHA, the workers most likely would have been using electrical lighting instead of open-flame lighting and would not have been sleeping in highly flammable makeshift huts. Thus, the evidence raises a triable issue of fact as to whether noncompliance with the EHA was a substantial factor in causing plaintiffs' injuries.

■■■■ Kosha failed to establish that there is no merit to plaintiffs' cause of action for negligence per se.[6]

## DISPOSITION

The judgment is reversed as to plaintiffs' causes of action for general negligence, premises liability, and negligence per se. The judgment is otherwise affirmed. Plaintiffs are awarded costs on appeal.

Huffman, Acting P. J., and McIntyre, J., concurred.

A petition for a rehearing was denied July 29, 1998, and respondents' petition for review by the Supreme Court was denied October 14, 1998. Baxter, J., and Brown, J., were of the opinion that the petition should be granted.

---

[6]Since plaintiffs have not addressed the court's summary adjudication of their causes of action that do not sound in negligence (i.e., intentional infliction of emotional distress, nuisance, breach of the implied warranty of habitability and conspiracy) we do not address the merits of those causes of action. Although our review of a summary judgment is de novo, it is limited to issues which have been adequately raised and supported in plaintiffs' brief. (See *Kim* v. *Sumitomo Bank* (1993) 17 Cal.App.4th 974, 979 [21 Cal.Rptr.2d 834]; *McGettigan* v. *Bay Area Rapid Transit Dist.* (1997) 57 Cal.App.4th 1011, 1016, fn. 4 [67 Cal.Rptr.2d 516]; Eisenberg et al., Cal. Practice Guide: Civil Appeals and Writs (The Rutter Group 1996) ¶ 8:17.2, p. 8-5, rev. #1, 1997.) Issues not raised in an appellant's brief are deemed waived or abandoned. (*Tan* v. *California Fed. Sav. & Loan Assn.* (1983) 140 Cal.App.3d 800, 811 [189 Cal.Rptr. 775].)