Filed 5/21/15  L J Sutter Partners v. Odysseus Farms CA3

## NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sutter)

----

| | |
|---|---|
| L J SUTTER PARTNERS, L.P., | |
| Plaintiff and Appellant, | C074082 |
| v. | (Super. Ct. No. CVCS081016) |
| ODYSSEUS FARMS et al., | |
| Defendants and Respondents. | |

This is the third appeal in the continuing saga of litigation over real property owned by Odysseus Farms (Odysseus)[1] in South Sutter County.  (See *South Sutter, LLC v. LJ Sutter Partners, L.P.* (*South Sutter I*) [(C057843) dismissed after the parties notified us of a settlement]; *S. Sutter, LLC v. LJ Sutter Partners, L.P.* (2011) 193 Cal.App.4th

---

[1]     LJ Sutter's second amended complaint was filed against Odysseus Farms, a California general partnership, Elysian Farms, Inc., and Robert Leal, as trustee of the Leal Family Trust.  We refer to defendants and respondents collectively as Odysseus.

1

634, 640 (*South Sutter II*).) This appeal concerns an option held by LJ Sutter Partners L.P. (LJ Sutter) to buy "mitigation" property from Odysseus. Mitigation property refers to real property that developers must acquire and set aside when proceeding to build residential and industrial developments. When the deadline loomed for LJ Sutter to make a large payment to preserve its option, it asked Odysseus for a loan and extension of time to make the option payment. When Odysseus refused, LJ Sutter engaged in a ruse by purporting to exercise the option but while imposing an impossible-to-fulfill condition. Odysseus eventually balked, and LJ Sutter sued for causes of action that included breach of contract, fraudulent inducement, fraudulent concealment, and intentional interference with prospective economic advantage. A trial was conducted by a referee and culminated in a judgment for Odysseus.

On appeal, LJ Sutter contends (1) the referee erred by finding LJ Sutter impliedly repudiated the option agreement by imposing the unreasonable condition that Odysseus provide assurances it could convey the mitigation property and (2) any implied repudiation was nullified by Odysseus's failure to treat the demand for assurances as a breach of contract. LJ Sutter's arguments focus exclusively on the referee's implied repudiation ground for rejecting the breach of contract claim.

We reject LJ Sutter's arguments for lack of prejudice. LJ Sutter has not addressed a second ground on which the referee based his decision, namely that LJ Sutter was equitably estopped from demanding assurances when it had argued in the collateral litigation that Odysseus unquestionably had clear title to the mitigation property. Moreover, LJ Sutter fails to discuss a third ground given by the referee for rejecting the breach of contract claim, namely abrogation of the contract by mutual intent of the parties. Thus, even if the contract had not been unilaterally repudiated by LJ Sutter, there are two other grounds for affirming the judgment for Odysseus: (1) LJ Sutter was

equitably estopped from demanding reassurances from Odysseus; and (2) the option agreement was mutually abrogated by the parties. Accordingly, we affirm.

BACKGROUND

We recount the factual and procedural history only to the extent pertinent to the resolution of the repudiation of contract arguments raised on appeal by LJ Sutter.

***An Expensive Option Becomes a Problem for LJ Sutter***

In 2004, South Sutter County was the focus of numerous developers who wanted to build residential and industrial projects. Part of Odysseus's property appeared to be valuable as mitigation property. In 2005, Odysseus sold a long-term option for acquisition of its mitigation property to LJ Sutter Partners.

A crisis loomed for LJ Sutter when a payment of $1,750,000 to renew the option was coming due in January 2008. With the severe downturn in the real estate market, LJ Sutter had run into financial difficulties, lawsuits, and roadblocks in its attempts to develop property in Sutter County. As the referee found, "by the end of 2006, it had become clear that LJ Sutter would not be able to realize the substantial profits contemplated when it entered into the O[ption] A[greement] with Odysseus in January, 2005. . . . [¶] Similarly, the only apparently available means to turn a profit from a different deal –- either with [the owners of the Sacramento] Kings or with Lynch [Developments, Inc.] –- also vanished with time. Thus, by the end of 2006, LJ Sutter was holding rights to acquire property for development with no real prospect of realizing profit on the deal."

LJ Sutter sought a loan from Odysseus and to have Odysseus extend the deadline for the option payment. When Odysseus refused, LJ Sutter purported to exercise the option and demanded assurances Odysseus could deliver title to 63 acres of mitigation property. At the time, the 63 acres were still part of litigation in *South Sutter II* that would not be resolved within the short option exercise window. Both LJ Sutter and

3

Odysseus went through the motions on the option purchase –- by opening escrow and even surveying the property –- even though neither side actually intended to follow through on the option purchase. In January 2007, Odysseus declared LJ Sutter to be in breach of the option agreement. Soon thereafter, LJ Sutter sued Odysseus for breach of contract and various other related causes of action. A 13-day trial before a referee resulted in a judgment in favor of Odysseus.

### The Referee's Statement of Decision

After trial, the referee issued a 43-page statement of decision. The referee found *three* bases for rejecting LJ Sutter's claim that Odysseus breached the option agreement.

### 1. Implied Repudiation

First, the referee found that "[t]he preponderance of the evidence establishes that the 'assurances' demanded by LJ Sutter at the time of the purported exercise of the option to purchase the 63 acres were not reasonable under the circumstances and constituted a repudiation of the Option Agreement by LJ Sutter." As the referee explained, "the means by which LJ Sutter communicated the exercise of the option on the 63 acres appears to have been an attempt to 'have their cake and eat it, too' –- i.e., exercise the option while trying to engineer a breach by Odysseus in order to have a basis to seek return of their investment –- the option payments. Put in other words, LJ Sutter's declaration that Odysseus was in breach of its obligations under the O[ption] A[greement] by virtue of the continuing litigation with South Sutter and its demands for 'assurances' that [Odysseus] could deliver title as required by the O[ption] A[greement] was, itself, a repudiation of the O[ption] A[greement]."

### 2. Equitable Estoppel

Second, the referee found that "when South Sutter filed Sutter I and Sutter II, LJ Sutter vigorously defended the litigation, asserting the very opposite of the position underlying the request for assurances." Thus, "*as a separate ground of decision on this*

4

*issue*, the Referee finds that, even if otherwise warranted on the facts, [LJ Sutter] is *equitably estopped* to assert the question of inability to deliver the property free of [LJ Sutter]'s claims as a basis for assurances." (Italics added.) As the referee explained, "LJ Sutter uniquely knew what its view of South Sutter's purported rights were and whether they had a true concern about those possible rights in connection with their own land acquisition from Odysseus. It is clear from LJ Sutter's conduct, starting with the events surrounding the Brennan Tract exchange in 2005, that LJ Sutter adamantly refuted the existence of those rights and that it intended Odysseus to act in concert with it in challenging those claims. Based on LJ Sutter's conduct, Odysseus was fully justified in concluding for several years that there was nothing to be concerned about in connection with the LJ Sutter-Odysseus agreement as a result of the South Sutter claims."

### 3. Abrogation of the Contract by Mutual Intent

Third, the referee found that "[t]he evidence also establishes that at the time Odysseus received the purported exercise of the option including the request for assurances, it had determined not to further honor the terms of the Option Agreement." The referee further found that "[t]he conduct of the parties from and after December 27, 2007, notwithstanding evidence that they ostensibly continued to perform certain aspects of the Option Agreement, constitutes their implied mutual abrogation of the Option Agreement." "Odysseus' response, particularly in light of [Odysseus manager] Leal's acknowledgements that he did not intend that Odysseus close on the 63 acres, was a response in kind –- we want out also. The net effect of this conduct is that it evidenced mutual intent of both parties to abandon the Option Agreement." Thus, "[a]s of January 18, 2008, then, both parties had, by their conduct, repudiated the contract." The referee added, "Like in *Jones v. Noble* (1934) 3 Cal.App.2d 316, 322, '[t]he facts in this case more nearly describe a case of an abandonment of the contract by one party, followed by the alleged acquiescence of the other."

5

On these grounds, the referee concluded, "there was no actionable breach of contract by Odysseus" with respect to the option agreement. Judgment was entered in favor of Odysseus.

DISCUSSION

We begin by noting a few cardinal principles of appellate review. We start with the presumption the judgment is correct. (*In re Marriage of Arceneaux* (1990) 51 Cal.3d 1130, 1133.) An appellant has the burden to demonstrate error. (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564.) And issues not raised in an appellant's opening brief are deemed abandoned. (*Reyes v. Kosha* (1998) 65 Cal.App.4th 451, 466.) Moreover, mere assertion of error does not suffice. "To demonstrate error, appellant must present meaningful legal analysis supported by citations to authority and citations to facts in the record that support the claim of error. (*City of Lincoln v. Barringer* (2002) 102 Cal.App.4th 1211, 1239, fn. 16; *In re Marriage of Nichols* (1994) 27 Cal.App.4th 661, 672-673, fn. 3.) When a point is asserted without argument and authority for the proposition, 'it is deemed to be without foundation and requires no discussion by the reviewing court.' (*Atchley v. City of Fresno* [(1984)] 151 Cal.App.3d [635,] 647; accord, *Berger v. Godden* [(1985)] 163 Cal.App.3d [1113,] 1117 ['failure of appellant to advance any pertinent or intelligible legal argument . . . constitute[s] an abandonment of the [claim of error'].)" (*In re S.C.* (2006) 138 Cal.App.4th 396, 408.)

LJ Sutter contends the judgment should be reversed for two reasons: (1) the implied repudiation finding of the referee was not supported by the facts or law, and (2) any implied repudiation was nullified by the fact Odysseus did not immediately declare LJ Sutter to be in breach of contract. In so arguing, LJ Sutter's opening brief does not mention the separate basis for finding repudiation of the contract –- namely that LJ Sutter was equitably estopped from demanding assurances from Odysseus in direct contravention to LJ Sutter's arguments in *Sutter I* and *Sutter II*. LJ Sutter's reply brief

6

even states that "estoppel is not the issue before the Court in this appeal." Thus, even if the referee erred that the demand for assurances constituted an implied repudiation, we would nonetheless affirm on the unchallenged equitable estoppel ground articulated by the referee.

Moreover, LJ Sutter presents no argument that the option agreement was abrogated by mutual intent of the parties. Abrogation by mutual intent, however, was a third basis on which the referee based his decision. LJ Sutter's opening brief refers only twice to this ground. First, LJ Sutter asserts: "Despite the Referee's finding that there was a 'mutual intent of both parties to abandon the Option Agreement' [citation], there was never a threat by statement or the conduct by either party that evidenced an intent to abandon this contract!" However, this assertion is made without the benefit of any legal authority regarding abrogation of contract by mutual intent. Instead, the assertion is made within the argument that focused on "California's existing doctrine of anticipatory breach by repudiation . . . ." This stray assertion does not constitute a developed argument that properly challenges the abrogation of contract finding of the referee. (*In re S.C.*, *supra*, 138 Cal.App.4th at p. 408.)

LJ Sutter's second reference to abrogation of contract is found in the conclusion of the opening brief, where it states: "The Referee disregarded the law when he determined that the parties mutually abrogated the agreement." This is a conclusion, not an argument. It does not properly raise the issue of abrogation of contract. (*Atchley v. City of Fresno*, *supra*, 151 Cal.App.3d at p. 647.) Consequently, the abrogation of contract ground has not been properly argued and constitutes a separate reason, apart from implied repudiation and equitable estoppel, for affirming the judgment. A single valid basis for the trial court's decision suffices to affirm the denial of a motion for new trial. (*Salazar v. Southern Cal. Gas Co*. (1997) 54 Cal.App.4th 1370, 1376; *Waller v. TJD, Inc.* (1993) 12 Cal.App.4th 830, 833.)

Based on the second and third grounds for the judgment, we reject LJ Sutter's arguments about implied repudiation for lack of prejudice.

DISPOSITION

The judgment is affirmed. Respondents Odysseus Farms, Elysian Farms, Inc., and Robert Leal shall recover their costs on appeal. (Cal. Rules of Court, rule 8.278(a)(1) & (2).)

                                             HOCH     , J.

We concur:

     BLEASE     , Acting P. J.

     NICHOLSON     , J.