Filed 4/7/14  In re Gabriel G. CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(El Dorado)

----

| | |
|---|---|
| In re GABRIEL G. et al., Persons Coming Under the Juvenile Court Law. | C074738 |
| EL DORADO COUNTY DEPARTMENT OF HUMAN SERVICES, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> LAURA G., <br><br> Defendant and Appellant. | (Super. Ct. Nos. PDP20110064 & PDP20110065) |

Mother appeals the juvenile court order terminating her parental rights to the minor, Avery G.[1]  She contends the juvenile court erred in finding neither the beneficial

---

[1]     Although mother appealed the dispositional orders for both Gabriel and Avery, she only raises claims as to the dispositional order for Avery.  "[O]ur review on appeal 'is . . . limited to issues which have been adequately raised and supported in [the appellant's opening] brief.  [Citations.]  Issues not raised in an appellant's brief are deemed waived or abandoned.' " (*Reyes v. Kosha* (1998) 65 Cal.App.4th 451, 466, fn. 6.)" (*State Water*

relationship nor sibling relationship exceptions to adoption applied.  We affirm the order of the juvenile court.

## BACKGROUND

In August 2011, the El Dorado County Department of Human Services (Department) filed petitions under Welfare and Institutions Code section 300[2] alleging mother had failed to protect the then three-year-old minor, Avery (hereafter minor), and his then 14-year-old brother, Gabriel, by failing to provide them with appropriate medical treatment and adequate care, and allowing her boyfriend, a registered sex offender, to be around her children.  (§ 300, subds. (b) & (d).)  Following a contested jurisdictional hearing in January 2012, the juvenile court found the allegations true and sustained the petitions.

The children were initially placed in a foster home together, but by October 2011, the Department had placed the minor in a different foster home, where he remained throughout these proceedings.

The minor was diagnosed as autistic.  The minor had significant developmental delays in speech, cognitive processes, social interactions, and fine motor skills.  The minor had adjusted well in his foster home, was beginning to seek physical contact and engage in positive interactions with his caregiver.  Although he was still significantly behind developmentally, he was improving.  His vocabulary continued to improve, his emotional connection with the foster family had strengthened, and he was working on potty training.  The behaviors associated with his anxiety had decreased as he positively adjusted to the foster family.  He was very bonded to the foster family.

---

*Resources Control Bd. Cases* (2006) 136 Cal.App.4th 674, 836.)  Accordingly, we deem mother's appeal as to Gabriel abandoned and dismiss it.

[2]      Undesignated statutory references are to the Welfare and Institutions Code.

The minor had supervised visits with mother three times a week and with his brother weekly. There were some problems in the visits, including mother getting frustrated with the minor, cursing and yelling at him, and getting frustrated with him. There were also visits where mother did not spend much time interacting with him or made highly inappropriate comments.

Mother continued to regularly visit the minor. The minor often returned from visits very messy, unclean, and his potty training and diapering needs had not been met. Generally, the minor made significant progress in his potty training but often regressed following visits.

As of May 2013, mother had continued to consistently visit the minor, three times a week for a total of eight hours. Gabriel joined the visits once a week.

The minor was flourishing with his foster family and his foster mother wanted to adopt him. The minor needs structure and routine to his day, which the foster home provides. He has special needs and delayed speech. He gets frustrated when redirected, hits himself, yells, and pinches, yells "time out" and goes to his room. He becomes upset when other children direct him to do something. The minor's foster mother had been caring for the minor for almost two years and was fully aware of his special needs. The minor had made tremendous growth living in her home. The minor called his prospective adoptive mother "Mom." The social worker concluded the minor was adoptable.

The juvenile court ordered a bonding study between the minor and Gabriel, as well as mother and the minor. Dr. Eugene Roeder conducted the bonding study. Dr. Roeder reported mother had been regularly visiting the minor. However, the foster mother reported the minor did not appear to anticipate the visits and did not show any reaction, positive or negative, to the visits. He did not talk about his brother or mother. There was also not a high level of interaction between the minor and his brother.

When mother entered the session, the minor ran to her. Throughout the session, mother would ask the minor questions. Sometimes he ignored her and sometimes he

3

responded, but it was clear mother did not understand everything he was saying. When mother left the session, the minor did not turn or respond, did not say goodbye to mother, and showed no response to her leaving. He continued to play by himself during mother's absence. When mother returned, he also did not respond.

When Gabriel joined the session, he asked the minor for a hug and received one. Gabriel told the minor to go to "mom now," but the minor resumed playing. Gabriel was very affectionate with the minor but when he asked for a kiss, the minor pulled away. The minor eventually began to play with Gabriel, but did not respond to Gabriel's telling him he loved him.

Dr. Roeder concluded: "Despite the frequent contact [the minor] has with his mother and his brother, he does not present on the evaluation as having a significant attachment with his mother, and only a slightly more positive attachment with his older brother. The evaluation results clearly indicate it would not be detrimental to [the minor] to terminate the relationship with his mother, and he would benefit from the stability and consistency of adoption. [¶] The issue of termination of the relationship between [the minor] and Gabriel is more complicated. This is a relationship [the minor] does enjoy, as much as any other, and as much as his ability will allow. At the same time, the evaluation results indicate, from [the minor's] perspective, it would not be detrimental to him to terminate this relationship."

The juvenile court held a contested section 366.26 hearing. Gabriel testified the minor was happy to see him during visits and they were physically affectionate with each other. Gabriel explained he and the minor played together during the bonding study, in the way that the minor does. They talked, Gabriel told the minor he loved and missed him, and by the minor's response, Gabriel believed the minor understood. Mother testified that prior to the minor's removal, she cared for him every day, took him for medical care, and played with him. During visits, they did the same kinds of things, and would play and share meals and watch movies. The minor would give both mother and

4

Gabriel hugs during visits. Mother attributed his physical affection to their bond. She explained he had not behaved normally in Dr. Roeder's office because they were in a strange environment.

The juvenile court found the minor was adoptable. The juvenile court agreed mother had maintained regular visitation and contact. However, the juvenile court concluded the minor would not benefit from continuing the relationship. The juvenile court also found that while there was some closeness on the minor's part to his brother, Dr. Roeder's conclusion that termination would not be detrimental to the minor was persuasive and the juvenile court adopted it. Having found clear and convincing evidence the minor was adoptable and no exceptions to adoption applied, the juvenile court terminated parental rights.

## DISCUSSION

At the selection and implementation hearing, the juvenile court must choose one of four alternative permanent plans for a minor; the permanent plan preferred by the Legislature is adoption. If the minor is adoptable, the court must terminate parental rights absent a showing of detriment to the minor. (*In re Ronell A*. (1996) 44 Cal.App.4th 1352, 1368.)

Under limited circumstances the juvenile court may find a "compelling reason for determining that termination [of parental rights] would be detrimental to the child." (§ 366.26, subd. (c)(1)(B).) One such circumstance is when "[t]he parents have maintained regular visitation and contact with the child and the child would benefit from continuing the relationship." (§ 366.26, subd. (c)(1)(B)(i).) Another such circumstance is when "[t]here would be substantial interference with a child's sibling relationship, taking into consideration the nature and extent of the relationship, including, but not limited to, whether the child was raised with a sibling in the same home, whether the child shared significant common experiences or has existing close and strong bonds with a sibling, and whether ongoing contact is in the child's best interest, including the child's long-term

5

emotional interest, as compared to the benefit of legal permanence through adoption." (§ 366.26, subd. (c)(1)(B)(v).) The burden is on the parent to establish the existence of any circumstances that constitute an exception to termination of parental rights. (*In re Cristella C.* (1992) 6 Cal.App.4th 1363, 1372-1373.)

I

*Beneficial Parental Relationship Exception to Adoption*

To establish the parental relationship exception to adoption, mother must establish she has "maintained regular visitation and contact with the child and the child would benefit from continuing the relationship." (§ 366.26, subd. (c)(1)(B)(i).) The benefit to the child must promote "the well-being of the child to such a degree as to outweigh the well-being the child would gain in a permanent home with new, adoptive parents. In other words, the court balances the strength and quality of the natural parent/child relationship in a tenuous placement against the security and the sense of belonging a new family would confer. If severing the natural parent/child relationship would deprive the child of a substantial, positive emotional attachment such that the child would be greatly harmed, the preference for adoption is overcome and the natural parent's rights are not terminated." (*In re Autumn H*. (1994) 27 Cal.App.4th 567, 575 (*Autumn H.*).)

The juvenile court's ruling declining to find an exception to termination of parental rights must be affirmed if it is supported by substantial evidence. (*Autumn H., supra*, 27 Cal.App.4th at p. 576; *In re Zachary G*. (1999) 77 Cal.App.4th 799, 809.) "On review of the sufficiency of the evidence, we presume in favor of the order, considering the evidence in the light most favorable to the prevailing party, giving the prevailing party the benefit of every reasonable inference and resolving all conflicts in support of the order. [Citations.]" (*Autumn H., supra,* at p. 576.)

"[F]requent and loving" contact is not sufficient to establish a sufficient benefit to overcome the preference for adoption absent a significant, positive, emotional attachment between parent and child. (*In re Beatrice M*. (1994) 29 Cal.App.4th 1411, 1418-1419.)

6

Neither a strong positive bond nor a "pleasant and emotionally significant" relationship with a parent is sufficient to defeat adoption when a child looks to a prospective adoptive parent to meet his needs. (*In re Derek W.* (1999) 73 Cal.App.4th 823, 827.)

Here, the minor lived out of his mother's custody for almost half his life. While mother was consistent in her visitation, there was no evidence the minor had any difficulty separating from her after visits. In fact, he regularly returned from visits very messy, unclean, and with his potty training and diapering needs unmet. There was no evidence the minor looked to mother for nurturing and guidance. There is no evidence mother occupied a parental role in the minor's life. Mother's relationship with the minor was limited and not characterized by safety, security, or dependability. There was no evidence the minor had a substantial positive emotional attachment with mother or that he would be greatly harmed by severing the relationship. Rather, the evidence was that the minor felt security in his foster home, and viewed his foster mother as his mother. On this record, we cannot find that any incidental benefit which might inure to the minor in maintaining the relationship with mother outweighed the benefit the minor will gain in a permanent home with new adoptive parents. The court did not err in finding the parental relationship exception to adoption did not apply.

II

*Sibling Bond Exception to Adoption*

To establish the sibling bond exception to adoption, "the parent must show the existence of a significant sibling relationship, the severance of which would be detrimental to the child. Many siblings have a relationship with each other, but would not suffer detriment if that relationship ended. If the relationship is not sufficiently significant to cause detriment on termination, there is no substantial interference with that relationship." (*In re L.Y.L.* (2002) 101 Cal.App.4th 942, 952, fn. omitted.) In making this assessment, the court must consider the interests of the adoptive child, not the siblings, in determining whether termination would be detrimental to the adoptive child.

7

(*In re Celine R.* (2003) 31 Cal.4th 45, 49-50; *In re Daniel H*. (2002) 99 Cal.App.4th 804, 813.)

Gabriel and the minor certainly shared experiences and the minor enjoyed the relationship as much as he could.  As with mother, the minor lived as much of his life without Gabriel as with him.  He has adapted well in his new home, bonded with his foster family, and is making great strides developmentally.  Dr. Roeder concluded in the bonding study that the minor would not suffer detriment from the termination of the relationship.  Moreover, it appears from this record it would be detrimental to the minor to remove him from the stable prospective adoptive home.  Mother did not meet her burden and there was no error in the court finding the sibling bond exception did not apply.

DISPOSITION

The orders of the juvenile court finding the minor Avery adoptable and terminating parental rights are affirmed.  The appeal as to Gabriel is dismissed.

        NICHOLSON        , J.


We concur:


        RAYE            , P. J.



        ROBIE           , J.