Filed 9/4/14  Ajaelo v. County of Los Angeles CA2/4

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| AMBROSE CHUKWUAGOZIE AJAELO, | B248289 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BC 444590) |
| v. | |
| COUNTY OF LOS ANGELES, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Zaven V. Sinanian and Michael P. Linfield, Judges.  Affirmed.

Ambrose Chukwuagozie Ajaelo, in pro. per.

Peterson * Bradford * Burkwitz, Avi Burkwitz, and Craig G, Marinho for defendant and respondent County of Los Angeles.

_____

**INTRODUCTION**

Ambrose Chukwuagozie Ajaelo appeals from a judgment, following a bench trial, in favor of respondent County of Los Angeles. He contends the trial court erred in granting summary adjudication on four of his five employment discrimination claims against respondent. He further contends that the court erred in denying his motion to reopen and continue discovery, which he made after his trial counsel withdrew from representing him. Finally, he contends the court erred in granting a motion for nonsuit on his remaining claim. We conclude appellant has not met his burden of showing that the trial court erred. Appellant has not shown that any of the purportedly adverse employment actions he suffered resulted from his race or national origin. Accordingly, we affirm.

**FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

A.   *Complaint Against County of Los Angeles*

Appellant is an African-American male of Nigerian national origin. He was employed as an "Associate Civil Engineer" by the Los Angeles County Department of Public Works (DPW). Keith Lee, Robert Scharf and Yolanda Malacon were his supervisors. On August 27, 2010, appellant filed a complaint against DPW, an agency of the County of Los Angeles (County), Lee, Scharf, and Malacon. In a first amended complaint (FAC), appellant alleged claims for race discrimination, national origin discrimination, harassment, failure to prevent discrimination, and retaliation under the Fair Employment and Housing Act (FEHA), Government Code section 12900 et seq. Appellant subsequently dismissed Lee, Scharf, and Malacon as defendants, leaving the County as the only named defendant.

The FAC alleged three categories of discrimination: failure to promote, failure to provide a fair work environment, and retaliation for filing a complaint with the Equal Employment Opportunity Commission (EEOC).

1.    *Failure to Promote*

The FAC alleged that appellant was denied a promotion at least four times over the past 10 years on account of his race and national origin, despite being highly qualified for those positions. Appellant contends he was qualified for a promotion based on an October 6, 2008 "Appraisal of Promotability," in which he was deemed "well qualified" for promotion in all areas of consideration. Appellant also contends he received much higher scores for a leadership class at the Los Angeles (L.A.) Academy than other employees who were promoted.

2.    *Failure to Provide a Fair Work Environment*

The FAC also alleged (1) that appellant was not assigned the necessary number of quality assistants, and (2) that appellant's supervisors failed to prevent one of his assistants from harassing him on account of his race or national origin.

The FAC alleged that in 2009, appellant's workload was increased but he was assigned only a single assistant, Narciso Duldulao, although other similarly-situated engineers were assigned two or three assistants. The FAC further alleged that Duldulao was "often disobedient and used profanity against Plaintiff, on several occasions in front of [appellant's supervisor] Lee. Defendant Duldulao not only called Plaintiff [']stupid['] on several occasions, but he went as far as to call Plaintiff a 'mother f**cker.' Defendant Duldulao did not conduct himself in such a lewd and disrespectful manner with any other member of the department."

The FAC further alleged that in or around September 2009, Duldulao refused to perform work requested by appellant. Appellant repeated the request verbally to Duldulao in front of Lee. In response, Duldulao started using profanity

3

and refused to complete the assignment. Despite being present, Lee took no corrective action. Appellant then issued a write-up to Duldulao for insubordination and use of profanity. Thereafter, an investigation of the incident was conducted by DPW, and statements from appellant and Duldulao were taken.

The FAC further alleged that in or around January 2010, appellant completed Duldulao's annual performance evaluation, in which he mentioned Duldulao's past conduct. Supervisor Scharf wrote another performance evaluation for Duldulao, and asked appellant to submit that one in lieu of appellant's evaluation. Lee, Malacon, and Scharf allegedly threatened appellant that if he did not withdraw his write-up of Duldulao, they would give him a negative review on his performance evaluation. When appellant refused, they told him that Duldulao's disobedience and use of profanity was due to appellant's poor communication skills and his accent.

### 3. *Retaliation*

In January 2010, appellant filed a complaint against DPW with the EEOC. In the amended EEOC complaint, appellant alleged that he was subject to different terms and conditions of employment due to his race, including reduction of staff despite increased workload and failure to support appellant's "directives" to Duldulao. The FAC alleged that around April 12, 2010, appellant met with Lee and Scharf about Duldulao. During this meeting, Lee and Scharf allegedly told appellant that they were disappointed with appellant's EEOC complaint and advised him that this would reflect poorly on his next performance evaluation. Appellant told them that he did not appreciate being threatened with retaliation for simply doing his job. He also requested to be transferred to a different division within the department.

4

Duldulao filed a grievance against appellant on January 27, 2010. Appellant tried to resolve the grievance informally by meeting with Duldulao in February 2010. The attempt failed when Duldulao allegedly "belittled [appellant] and insulted him." At the meeting, Duldulao showed appellant a tape recorder and advised him that the meeting was being recorded. Immediately after the meeting, appellant emailed David Pak from human resources and informed him that the meeting had been tape-recorded.

The FAC alleged that on June 28, 2010, appellant was "suddenly" summoned to a meeting with Lorena Andrade-Guzman from human resources, and asked to give a statement regarding the meeting with Duldulao. Appellant was asked several times if he ever saw a tape recorder, and he categorically denied seeing one. On July 2, 2010, appellant e-mailed Andrade-Guzman to inform her that he had been mistaken about not seeing a tape recorder. Subsequently, appellant received a written reprimand for his "failure to use sound judgment, report information accurately and completely, and willful deceit."

On July 28, 2010, appellant received a poor annual performance evaluation. He was rated as performing at an "overall marginally competent manner." He was rated as weak in "completion of work on schedule, accuracy, thoroughness, written expression, observance of rules and regulations, compliance with work instructions, orderliness in work, application to duties, performance in new situations, performance with minimum instructions, leadership, and making decisions." The evaluation also noted that appellant's emails to his supervisors contained "demeaning language, accusations without supporting evidence, and a serious tone of disrespectfulness toward his supervisors." On July 30, 2010, appellant was informed by Scharf that he had been transferred to his former division.

Finally, the FAC alleged that "[o]n or about July 29, 2010, Plaintiff filed charges with the State of California, Department of Fair Employment and Housing and received immediate right to sue letters."

B.    *Motion for Summary Judgment, or in the Alternative, Summary Adjudication*

On August 3, 2011, respondent filed a motion for summary judgment, or in the alternative, summary adjudication. In the motion, respondent argued that the entire case should be dismissed, as appellant had failed to prove he had exhausted his administrative remedies by timely filing a complaint with the Department of Fair Employment and Housing (DFEH). Even assuming that appellant had exhausted his claims by filing a DFEH complaint on July 29, 2010, respondent contended that appellant's first, second, and fourth causes of action were time-barred. In the alternative, respondent argued that all of the causes of action in the FAC lacked merit.

1.    *Failure to Promote*

Respondent argued that appellant was not promoted due to his ineligibility for promotion, not due to his race or national origin. Pursuant to County of Los Angeles's Civil Service Rule 11.01, appointments for vacant positions must be made from the highest "band," or group of candidates based on their application scores and their Appraisal of Promotability. If there are less than five candidates in the highest band, candidates from the next highest band are included. Thus, candidates in the highest band and the next highest band are in a "reachable band" considered for a promotion. Appellant applied for a position as a civil engineer in 2001, for positions as a civil engineer and senior civil engineer in 2003, and for a position as a civil engineer in 2005, 2006, and 2008. However, respondent noted that appellant was not within a "reachable band" based on his application scores

6

and his appraisals for any of those positions at those times. Thus, appellant was not promoted because he was ineligible under the civil service rules.

Moreover, respondent argued, nothing suggested that appellant's race or national origin was considered in the promotion decisions. Despite appellant's suggestion that his supervisors' comments about his poor communication skills were based on his accent, appellant conceded in his deposition that the comments were about his *written* communication skills. Appellant also conceded he made occasional typographical errors.

Respondent further argued that appellant's scores for the L.A. Academy leadership course were not relevant to the decision not to promote him. Appellant admitted in his deposition that he had never shown his scores to his supervisors, and Malacon declared under oath that the course was given on a pass/fail basis.

Finally, respondent argued that the evidence showed no discrimination against appellant due to his race or national origin, as other African-American employees and Nigerian-born applicants were promoted to civil engineer and other superior positions during that same time period.

2.      *Failure to Provide Fair Work Environment*

In its motion, respondent also argued that appellant was fairly treated in terms of assigning assistants. From December 16, 2008 through August 31, 2009, appellant supervised three civil engineering assistants. At the end of August 2009, the engineering unit was reorganized and appellant was reassigned. Appellant conceded in his deposition that his new work assignment was easier. He was assigned one civil engineering assistant -- Duldulao -- and one student worker. Other associate civil engineers in similarly situated positions within the operational services division had the same number of assistants.

On October 19, 2009, the student worker became a permanent employee and was reassigned. Appellant had a student worker vacancy for five months because appellant failed to interview candidates for the opening. The vacancy did not last longer than five months because appellant's supervisors took the initiative to interview the candidates and hire one.

As to Duldulao, respondent contended that the relationship between appellant and Duldulao was friendly and productive at the beginning of the assignment, but deteriorated over time. In his deposition, appellant acknowledged knowing that Duldulao had a history of being a difficult employee, and telling his supervisors that he could make Duldulao a good employee. Appellant was never disciplined, was never suspended, and never had his pay decreased. In contrast, Duldulao was suspended for 10 days without pay for his misbehavior regarding appellant. In his deposition, appellant acknowledged he was unaware that Duldulao had been disciplined.

According to respondent, appellant was asked to re-write his evaluation of Duldulao because the evaluation was inappropriate and heavily focused on Duldulao's negative behaviors. Respondent asserted that it was within management's discretion to re-write an employee's performance evaluation.

3. *Retaliation*

Finally, respondent argued that there was no retaliation for appellant's filing of the EEOC complaint. Respondent contended that appellant suffered no adverse employment action, and that any adverse employment action he may have suffered was not a result of appellant's filing of the EEOC complaint. For example, the failure to promote appellant could not have been causally related to the EEOC complaint, as appellant last applied for a promotion in 2008, but did not file his EEOC complaint until 2010. In addition, the written reprimand was factually

8

supported, and appellant's 2010 performance evaluation accurately reflected his work performance. Moreover, respondent argued, being counseled in a "write-up," such as the written reprimand, with no accompanying suspension or punishment did not rise to the level of an adverse employment action. Finally, respondent noted, appellant was transferred to the design division (from the operational services division) pursuant to his own request.

C. *Appellant's Opposition to Motion for Summary Judgment*

Appellant opposed the motion for summary judgment. Appellant argued he had exhausted his administrative remedies by filing complaints with DFEH and receiving immediate right-to-sue letters on July 29, 2010. Appellant also contended his claims were timely under the continuing violation doctrine. Finally, appellant asserted that his own testimony, along with other evidence, created triable issues of material fact with respect to all of his causes of action.

D. *Ruling on Motion for Summary Judgment*

After respondent filed a reply reiterating its arguments and asserting that there were no triable issues of fact, the trial court issued a ruling on October 19, 2011. The court denied summary judgment, denied summary adjudication on the fifth cause of action for retaliation, and granted summary adjudication with respect to the remaining causes of action. The court found that the claims based upon appellant's failure to be promoted were untimely, as they were based on actions that occurred outside the one-year statute of limitations. The court further found that the continuing violation doctrine did not apply to appellant's claims, as appellant failed to show that his failure to be promoted was due to discriminatory animus.

As to the remaining claims, except for the retaliation claim, the court ruled that appellant failed to establish a prima facie case. The court found that appellant

9

failed to show that other similarly situated engineers were assigned more than one assistant. The court determined that appellant had not shown that his difficulties with Duldulao were the result of discriminatory animus. The court also found that appellant failed to show that Duldulao's harassment was sufficiently pervasive, or the result of discriminatory animus. Accordingly, the court granted summary adjudication as to appellant's causes of action for race discrimination, national origin discrimination, harassment, and failure to prevent discrimination.

As to the fifth cause of action for retaliation, however, the court found the timing of the written reprimand raised an inference of retaliatory animus, and triable issues of fact precluded the grant of summary adjudication.

E. *Appellant's Motion to Reopen and Continue Discovery*

Appellant filed his original complaint in August 2010 and his FAC in February 2011. The cut-off for discovery was set for November 14, 2011, and trial was initially set for December 12, 2011. After the court ruled on respondent's motion for summary judgment, the parties entered into settlement talks. Four days before the trial was to start, the parties agreed to settle. The December 12, 2011 trial date was vacated when appellant's counsel filed a notice of settlement. However, appellant refused to sign the settlement agreement. Appellant's counsel then withdrew from representing him, and the trial court re-set trial on the remaining retaliation claim for December 17, 2012.

On May 25, 2012, appellant, in propria persona, filed a motion to reopen and continue discovery. He argued that he needed to reopen discovery because he lacked knowledge of his case, and he wished to locate or uncover information "previously missed by his ex-lawyer" that would substantiate his claims. Respondent objected, arguing that appellant had shown no justification for reopening discovery. Respondent noted the extensive discovery in the case, and

10

argued that reopening discovery would impose a severe burden. On July 20, 2012, the trial court denied appellant's motion, finding no good cause to reopen discovery.

F.      *Bench Trial on Retaliation Claim*

On February 11 and 13, 2013, the court held a bench trial on appellant's retaliation claim. Appellant called witnesses, including human resources employees Pak and Andrade-Guzman. Appellant also testified on his own behalf.[1] After appellant presented his case, respondent moved for nonsuit under Code of Civil Procedure section 631.8. The court granted the motion, finding that the evidence presented was insufficient to show a prima facie case of retaliation. The court found that appellant failed to show that he was subjected to an adverse employment action, as the conditions of appellant's employment remained the same. As the court observed, "his conditions of work haven't changed. Mr. Ajaelo has the same salary as he had previously. He has the same title. He has the same position. He has transferred to a different department, but that transfer, he requested to be transferred." Additionally, the court found no causal connection between the filing of appellant's EEOC complaint and any subsequent action he believed adversely affected him. As the court observed, much of appellant's difficulties at his workplace predated his filing of the EEOC complaint. Moreover, although appellant was unhappy with how his supervisors responded to his complaints about Duldulao, he failed to show that their conduct was based on discriminatory animus, as opposed to a bureaucratic mindset.[2] Finally, appellant's

---

[1]      Although there were two days of trial, appellant designated only the second day's proceeding as part of the record on appeal.

[2]      As the court observed, much of appellant's dissatisfaction appeared to stem from the unwillingness of various higher level supervisors to "'state exactly where

11

supervisors backed him over Duldulao: appellant never changed his performance evaluation of Duldulao, and Duldulao was suspended 10 days for his mistreatment of appellant.

Judgment in favor of respondent and against appellant was entered February 27, 2013. Appellant filed a timely notice of appeal from the judgment.

## DISCUSSION

As an initial matter, we note that appellant's opening brief is disorganized, replete with typographical and grammatical errors, and difficult to understand. In short, it violates California Rules of Court, rule 8.204, by failing to concisely and clearly explain the factual and procedural background of the case. (See *Nwosu v. Uba* (2004) 122 Cal.App.4th 1229, 1246-1247 [self-represented party must follow rules of appellate procedure].) We discern the following arguments from appellant's opening brief: first, that the trial court erred in granting summary judgment by misinterpreting appellant's facts and arguments; second, that the court abused its discretion in denying appellant's motion to reopen and continue discovery, when it ignored his argument that "some critical documents Defendant was supposed to submit [were] missing"; and third, on the retaliation claim, that the court erred in entering a judgment of nonsuit, as the court incorrectly determined that appellant "neither suffered nor sustained damages" as a result of respondent's tortious actions.

On appeal, the judgment of the trial court is presumed to be correct, and appellant has the burden of demonstrating reversible error by an adequate record. (*Ballard v. Uribe* (1986) 41 Cal.3d 564, 574; accord *Denham v. Superior Court* (1970) 2 Cal.3d 557, 564; *Fladeboe v. American Isuzu Motors, Inc.* (2007)

---

I went wrong and refer directly to my written instructions'" when responding to appellant's complaints concerning Duldulao.

12

150 Cal.App.4th 42, 58.) Moreover, any issue not adequately raised or supported is deemed forfeited. (*Reyes v. Kosha* (1998) 65 Cal.App.4th 451, 466, fn. 6; accord *Diamond Springs Lime Co. v. American River Constructors* (1971) 16 Cal.App.3d 581, 608; see also *Del Real v. City of Riverside* (2002) 95 Cal.App.4th 761, 768 ["The appellate court is not required to search the record on its own seeking error."].)

A. *The Trial Court Properly Granted Summary Adjudication on Appellant's First Four Causes of Action for Employment Discrimination.*

"A defendant is entitled to summary judgment if the record establishes as a matter of law that none of the plaintiff's asserted causes of action can prevail. [Citation.]" (*Molko v. Holy Spirit Assn.* (1988) 46 Cal.3d 1092, 1107.) Generally, "the party moving for summary judgment bears an initial burden of production to make a prima facie showing of the nonexistence of any triable issue of material fact; if he carries his burden of production, he causes a shift, and the opposing party is then subjected to a burden of production of his own to make a prima facie showing of the existence of a triable issue of material fact." (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850.)

On appeal, appellant never addresses the trial court's determination that his discrimination claims for failure to promote were time-barred. (See Gov. Code, § 12960, subd. (d) [DFEH complaint must be filed within one year of last alleged unlawful employment practice]; accord *Romano v. Rockwell Internat., Inc.* (1996) 14 Cal.4th 479, 492.) Appellant filed his DFEH complaints on July 29, 2010. However, he last applied for a promotion in October 2008, which is outside the

13

limitations period.  Thus, the trial court properly found appellant's claims for failure to promote were time-barred.[3]

Appellant also fails to address the trial court's determination that respondent had no discriminatory intent in assigning appellant one engineer and one student worker as assistants.  The undisputed evidence shows that the change in the number of assistants assigned to appellant resulted from a change in his work duties -- a legitimate, nondiscriminatory business reason.  Nothing suggests the change resulted from discriminatory animus.  Moreover, his complaint about being assigned inadequate assistance is belied by his own delay in interviewing candidates to fill the vacant student assistant position.

Likewise, nothing in the record suggests that the assignment of Duldulao to appellant was the result of discriminatory animus.  Appellant admitted he knew

---

[3] Even were we to find the claims not time-barred, we would conclude that appellant has not shown that his failure to be promoted was the result of discriminatory animus.  Appellant was not eligible for promotion, as he was not within a "reachable band" of candidates for the promotions.  To the extent he argues that he was not placed within a "reachable band" as a result of discrimination, no evidence supports that theory.  Appellant suggests that his accent led to an evaluation of poor communications skills, which prevented him from being promoted.  However, he conceded that he was criticized for poor *written* communications skills.

For the first time on appeal, appellant argues that he received disparate treatment due to his race or national origin, because Lee, who is of Asian descent, was promoted despite making similar grammatical and typographical errors.  As this argument was raised for the first time on appeal, it is forfeited.  Even were we to consider the argument, the evidence cited (an e-mail from Lee) does not support the assertion.  The e-mail contains only a minor grammatical error, and appellant himself conceded making typographical errors in his own work product.  As to the L.A. Academy leadership course, purporting to show his strong communication skills, there is no evidence that the course tested written communication skills.  In any event, appellant conceded he never told his supervisors his scores for the course.

14

Duldulao had a reputation as a difficult employee, but told his supervisors that he could turn Duldulao into a good employee. Nothing in the record demonstrates that the deterioration in appellant's relationship with his assistant was caused by discriminatory animus on the part of appellant's supervisors.

As to appellant's harassment claim, he fails to address the court's determination that Duldulao's insubordination did not constitute discriminatory harassment, as no evidence showed it was sufficiently severe and pervasive, or motivated by animus toward appellant's race or national origin. Nor do the various employment practices alleged by appellant in his complaint constitute discriminatory harassment, as no evidence suggests those practices were motivated by discriminatory animus.

Regarding appellant's claim for failure to prevent discrimination and harassment, appellant contends that respondent should have taken "immediate and appropriate corrective action to end Mr. Duldulao's acts of insubordination." As appellant was Duldulao's immediate supervisor and had expressed his desire to turn Duldulao into a good employee, it was reasonable for respondent to allow appellant time to correct Duldulao. Moreover, Duldulao *was* eventually suspended for 10 days without pay for his behavior toward appellant.[4]

In sum, appellant has not met his burden on appeal to demonstrate that the trial court erred in granting summary adjudication on his claims for race

---

[4] Appellant contends that the delay in punishing Duldulao showed discriminatory intent. He argues that when Lee had an issue with Duldulao, "[a]pparently it was dealt with within two [m]onths." However, no evidence supports this time frame. The record citation shows that when Lee was Duldulao's supervisor, Duldulao was reprimanded for angrily leaving a meeting and forcefully slamming the door on his way out. Nothing states when the reprimand occurred, or otherwise describes the investigation into Duldulao's behavior.

15

discrimination, national origin discrimination, harassment, and failure to prevent discrimination.

B.     *The Trial Court Properly Denied Appellant's Motion to Reopen and Continue Discovery*

Appellant contends the trial court abused its discretion when it denied his motion to reopen and continue discovery by ignoring his argument that respondent had failed to produce relevant documents. Appellant cites nothing to support his assertion that respondent failed to comply with its discovery duties. His speculation does not constitute good cause to reopen discovery. The court thus acted within its discretion to deny the motion.

C.     *The Trial Court Properly Granted a Motion for Nonsuit on Appellant's Retaliation Claim*

Finally, appellant contends the trial court erred in granting respondent's motion for nonsuit, as the evidence showed he suffered adverse employment actions. However, appellant does not challenge the court's determination that no adverse employment action was caused by his protected activity of filing the EEOC complaint. That failure defeats his appeal.

Nevertheless, we address three employment actions -- the written reprimand, the performance evaluation, and the transfer -- that occurred after he filed his EEOC complaint. As the trial court acknowledged, the timing of these actions suggested that they could be causally linked to appellant's protected activity. Even assuming, however, that the negative evaluations were undeserved, "mere oral or written criticism . . . does not meet the definition of an adverse employment action under FEHA," unless accompanied by other adverse employment actions. (See *Akers v. County of San Diego* (2002) 95 Cal.App.4th 1441, 1457.) Thus, where an employee is criticized, but his employer does nothing affirmative to effect a

16

material change in any term of condition of his employment, the employee cannot establish a case of retaliation under FEHA. (*Pinero v. Specialty Restaurants Corp.* (2005) 130 Cal.App.4th 635, 646; see *McRae v. Department of Corrections & Rehabilitation* (2006) 142 Cal.App.4th 377, 382-383, 393, 396 [insufficient evidence supported retaliation claim where, although plaintiff was reprimanded, her subsequent transfer was to a comparable position, where her title and pay were not reduced, and she was transferred away from employees she believed to be hostile to her].)  Here, it is undisputed that appellant was not terminated, suspended or disciplined as a result of his performance evaluation or his written reprimand. Nor was his title or pay reduced.  As to the transfer, appellant failed to show that it was an adverse employment action, as he requested a transfer and no competent evidence showed that the new position was not comparable.  Thus, appellant demonstrated no adverse employment action.[5]

---

[5]    For the first time on appeal, appellant contends that the written reprimand, which charged him with willful deceit, constituted libel.  Because this contention was raised for the first time on appeal, it is forfeited.  Moreover, as appellant has pled no cause of action for libel, it is not before us.

17

## DISPOSITION

The judgment is affirmed.  Costs are awarded to respondent.

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.

MANELLA, J.

We concur:

EPSTEIN, P. J.

EDMON, J.*

_____

* Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section  6 of the California Constitution.

18